**Tommy Lynn SELLS, Appellant,**

v.

**The STATE of Texas.**

**No. 73993.**

Court of Criminal Appeals of Texas, En banc.

March 12, 2003.

Rehearing Denied April 23, 2003.

Mark Stevens, San Antonio, for appellant.

Fred Hernandez, Dist. Atty., Del Rio, Matthew Paul, State's Attorney, Austin, for state.

## OPINION

KELLER, P.J., delivered the opinion of the Court in which WOMACK, KEASLER, HERVEY, HOLCOMB, and COCHRAN, JJ., joined.

In September 2000, a jury convicted appellant of capital murder.[1] Pursuant to the jury's answers to the special issues set forth in Texas Code of Criminal Procedure Article 37.071, §§ 2(b) and 2(e), the trial judge sentenced appellant to death.[2] Direct appeal to this Court is automatic.[3] Appellant raises thirty-six points of error. We will affirm.

## I. SUFFICIENCY OF THE EVIDENCE

### A. Background

On the evening of December 30, 1999, appellant was at a convenience store when Terry Harris drove up and spoke to him.

---

1. TEX. PENAL CODE ANN. § 19.03(a).

2. Art. 37.071, § 2(g). Unless otherwise indicated all future references to Articles refer to the Code of Criminal Procedure.

3. Art. 37.071, § 2(h).

Harris said that, when he returned from Kansas, he would repay the $5,000 drug debt he owed appellant. Later that evening, appellant went to a bar where he stayed until closing time. A waitress there, Noell Houchin, confirmed that appellant arrived around 10:00 p.m. and stayed for four hours. During that time he drank four beers and seemed obsessed with having sex with her. Houchin told the jury that appellant repeatedly asked to have sex with her, even offering to pay for it, despite her refusing repeatedly and telling him that she had a boyfriend. Houchin also testified that appellant did not seem intoxicated when he left around 2:15 a.m.

After leaving the bar, appellant went to a flea market and drank more beer. After a while, appellant started thinking that Harris "had been fucking with" him about paying the debt, and he decided "to do something about it." Appellant thereafter retrieved more beer and a knife from his house and drove over to Harris's house. Appellant parked down the street from Harris's home, which was located in a somewhat remote area. When appellant entered the backyard, the dog, who was in the front yard, began to bark. Appellant walked to the front yard and petted the dog. Because appellant had previously befriended the Harris's dog, the dog stopped barking. After trying unsuccessfully to break in through the back door and a locked window, appellant found an open window and entered the residence. After looking in various rooms, appellant went into a room where two young girls were sleeping on bunk beds. Appellant laid on the bottom bunk with thirteen-year-old Kaylene Harris and cut off her panties with his knife. After appellant inserted his finger into Kaylene's vagina, she jumped out of bed. Appellant, however, blocked the door and stabbed Kaylene as she tried to escape. Appellant then cut Kaylene's throat several more times and went over to her eleven-year-old compan-

ion, Krystal Surles, who was still on the top bunk, and cut her throat.

Appellant left the trailer, wiped his fingerprints off a doorknob, and took two window screens with him because they had his fingerprints on them. Appellant disposed of the screens and his knife on the way to his home.

Krystal survived the attack and walked about a quarter of a mile to a neighbor's house to get help. She later supplied a description of the man who had attacked her, and appellant was subsequently identified and arrested. When Harris returned home, he found the telephone line had been cut. He told the authorities that appellant had been to his home on several occasions and had learned where the telephone line was the day appellant helped Harris fix a leaking pipe at the house.

Scientific tests conducted on the clothes recovered from appellant and testimony from the medical examiner regarding Kaylene's wounds corroborated statements appellant gave to the police concerning the incident. However, appellant claimed that he had no specific intent to commit sexual assault when he broke into the Harris home. Rather, everything happened spontaneously.

## B. Analysis

In point of error twenty-six, appellant asserts that the evidence is legally insufficient to prove capital murder because he did not specifically intend to commit aggravated sexual assault when he broke into the Harris trailer. In point of error twenty-seven, he asserts that the evidence is factually insufficient for the same reason.

■ In reviewing the legal sufficiency of the evidence, this Court looks at all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential

elements of the offense beyond a reasonable doubt.[4] The indictment in the instant case alleged that appellant intentionally caused the death of Kaylene Harris while in the course of "committing burglary of a habitation with intent to commit aggravated sexual assault."[5] The State's evidence included appellant's own statements that he broke into the Harris trailer without consent and sexually assaulted a young girl at knifepoint. His statements also indicated that he prepared to encounter persons in the home by securing a knife before arriving at the residence. Other evidence showed that appellant knew the Harris family and the layout of their home, knew that Terry Harris would be out-of-town, and knew the location of the phone line. Finally, the jury could have rationally inferred appellant's intent to commit aggravated sexual assault from his obsession with sex at the bar earlier in the evening and from the fact that he secured a weapon before he went to the Harris home.

Looking at the evidence in the light most favorable to the verdict, we hold that the jury could have rationally determined that appellant murdered Kaylene Harris while in the course of committing burglary with the intent to commit aggravated sexual assault. Point of error twenty-six is overruled.

 In a factual sufficiency review, this Court views all the evidence without the prism of "in the light most favorable to the prosecution" and sets aside the verdict only if the evidence supporting the verdict is so weak or so against the great weight and preponderance of contrary evidence as to render the verdict clearly wrong and manifestly unjust.[6] A clearly wrong and unjust verdict occurs where the jury's finding is "manifestly unjust," "shocks the conscience," or "clearly demonstrates bias."[7]

 In conducting such a review, we consider all of the evidence weighed by the jury, comparing the evidence which tends to prove the existence of the elemental fact in dispute to the evidence which tends to disprove it.[8] We are authorized to disagree with the jury's determination even if probative evidence exists which supports the verdict, but we must avoid substituting our judgment for that of the fact-finder.[9]

The evidence that appellant asserts weighs against a finding that he broke into the Harris home with a specific intent was his own statement that he had no such intent. This does not render the evidence factually insufficient. Point of error twenty-seven is overruled.

## II. VOIR DIRE

### A. Parole questions

#### 1. *Background*

In points of error six through nineteen, appellant contends that the trial court violated Article I, section 10 of the Texas Constitution and the Due Process Clause

---

4. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

5. The indictment contained a second count charging appellant with murdering Kaylene Harris while in the course of committing aggravated sexual assault, however, this count was subsequently quashed.

6. *Johnson v. State*, 23 S.W.3d 1, 11 (Tex.Crim. App.2000); *see also Goodman v. State*, 66 S.W.3d 283, 285–86 (Tex.Crim.App.2001).

7. *Santellan v. State*, 939 S.W.2d 155, 164 (Tex.Crim.App.1997) (holding that death penalty convictions can be reviewed for factual sufficiency).

8. *Johnson*, 23 S.W.3d at 7.

9. *Johnson*, 23 S.W.3d at 7; *Santellan*, 939 S.W.2d at 164.

of the Fourteenth Amendment to the United States Constitution when it refused to allow him to question the entire venire and various individual veniremembers on the law of parole. Specifically, he asserts that he was not allowed to ask the following four questions:

1. Would the minimum length of time a defendant could serve in prison before he could be paroled be something you would want to know in answering the special issues?

2. On which special issue would this be important? How would this 40 year minimum sentence be important to you in answering the special issues?

3. Would you be more likely, or less likely, generally, to view a defendant as a continuing threat to society if you knew he could not be paroled for a minimum of 40 years?

4. What kind of evidence would you expect, as a juror, to help you in considering the 40–year parole ineligibility factor when answering the special issue? [10]

He also complains that the trial court specifically ruled that no questions regarding parole law would be permitted. Appellant contends that, after the statutory amendment adding Article 37.071, § 3(e)(2)(B),[11] parole eligibility became an issue applicable to capital murder prosecutions, and thus, a proper inquiry for voir dire.

The State contends that, despite the enactment of the parole instruction provision, parole remains an improper subject of voir dire because "society" includes both free and prison society, and therefore, incarceration does not reduce or increase the defendant's future dangerousness. Alternatively, the State argues that parole does not become an issue applicable to the case until requested under the statute, and therefore, appellant was not entitled to ask questions about parole because he had not yet submitted a written request for an instruction under § 3(e)(2)(B).

### 2. *Analysis*

■■■■ The trial court has broad discretion over the process of selecting a jury.[12] Without the trial court's ability to impose reasonable limits, voir dire could go on indefinitely.[13] Thus, we leave to the trial court's discretion the propriety of a particular question and will not disturb the trial court's decision absent an abuse of discretion.[14] A trial court abuses its discretion when it prohibits a proper question

---

**10.** Appellant also points out that the trial court *sua sponte* disallowed defense counsel's attempt to ask a prospective juror "when you think of a life sentence, what does that mean to you?" as an example of the trial court's actions in precluding questioning about minimum parole eligibility. However, a juror's preconceived opinion about a capital life inmate's eligibility for parole is irrelevant to the case.

**11.** The statute provides in relevant part:

(2) The court, on the written request of the attorney representing the defendant, shall:

\* \* \*

(B) charge the jury in writing as follows: "Under the law applicable in this case, if the defendant is sentenced to imprisonment in the institutional division of the Texas

Department of Criminal Justice for life, the defendant will become eligible for release on parole, but not until the actual time served by the defendant equals 40 years, without consideration of any good conduct time. It cannot accurately be predicted how the parole laws might be applied to this defendant if the defendant is sentenced to a term of imprisonment for life because the application of those laws will depend on decisions made by prison and parole authorities, but eligibility for parole does not guarantee that parole will be granted."

**12.** *Barajas v. State,* 93 S.W.3d 36, 38 (Tex. Crim.App.2002).

**13.** *Id.*

**14.** *Id.*

about a proper area of inquiry.[15] A question is proper if it seeks to discover a juror's views on an issue applicable to the case.[16] However, an otherwise proper question is impermissible if the question attempts to commit the juror to a particular verdict based on particular facts.[17] In addition, a trial judge may prohibit as improper a voir dire question that is so vague or broad in nature as to constitute a global fishing expedition.[18]

■ With the change in the law effective September 1, 1999, a jury may now be instructed on a capital defendant's eligibility for parole.[19] Assuming, without deciding, that the statutory change renders questioning about parole permissible in some situations,[20] appellant has failed to show error here.

To preserve error, appellant must show that he was prevented from asking *particular* questions that were proper. That the trial court generally disapproved of an area of inquiry from which proper questions could have been formulated is not enough because the trial court might have allowed the proper question had it been submitted for the court's consideration.[21]

Here, none of appellant's proposed questions were proper.

All of appellant's questions relate to how a particular fact (in this case, the minimum amount of time a capital life defendant must be incarcerated before becoming eligible for parole) might influence jury deliberations. These types of questions implicate the strictures imposed by *Standefer* against commitment questions and by *Barajas* against ambiguous questions.[22] Appellant's questions all appear to be attempts, either directly or through ambiguously worded questions, to commit the veniremembers to giving mitigating or aggravating effect to the minimum parole eligibility requirement. Appellant's first proposed question—about whether a veniremember would want to know the minimum time a defendant could serve in prison before he could be paroled—is not strictly relevant to a juror's duties or any issue in the case. What the jurors wants to know is immaterial; the trial court will give jurors the proper information about the application of the law. The perceived relevance of the question stems from *why* a juror wants to know about parole law. This implied "why" question is ambigu-

---

**15.** *Id.* at 38.

**16.** *Id.*

**17.** *Id.; see also Standefer v. State,* 59 S.W.3d 177, 181 (Tex.Crim.App.2001).

**18.** *Id.*

**19.** *See* Art. 37.071 § 2(e)(2)(B).

**20.** In *Jones v. State,* we addressed a defendant's claim that the trial court erred in failing to permit voir dire on parole law as it applied to the lesser-included offense of murder. 843 S.W.2d 487, 498 (Tex.Crim.App. 1992), *cert. denied,* 507 U.S. 1035, 113 S.Ct. 1858, 123 L.Ed.2d 479 (1993). We did not determine whether the refusal to permit questioning on the subject was error; instead, we held that any error that might have been

committed was harmless because the defendant was convicted of capital murder, and thus, there was no occasion to submit parole instructions to the jury on the lesser offense. *Id.*

**21.** *See* Tex.R.App. P. 33.1(a)(1)(A).

**22.** These are not questions, for example, that inquire into a prospective juror's personal background for the purpose of determining whether that background will adversely affect the juror's ability to decide the case in an impartial manner, nor are they inquiries into a prospective juror's general philosophical outlook on the justice system (such as whether the retribution, deterrence, or rehabilitation is the prime goal of the criminal justice system). The parties are given broader latitude to ask such general background and philosophy questions.

ous. Does the prospective juror want to know minimum parole eligibility because that knowledge will foreclose honest consideration of the special issues or because that knowledge will have an impact on how evidence is evaluated with regard to the special issues?[23] If the latter, the question is really designed to determine whether the veniremember would give, or to commit the veniremember to giving, mitigating or aggravating impact to the minimum parole eligibility requirement. Appellant's second and fourth questions invite the prospective jurors to set the parameters for their decision-making by determining to which special issues the parole eligibility instruction would be considered relevant, the mitigating or aggravating impact the instruction would have on the juror's consideration of the special issues, and what evidence would tend to accentuate or minimize the parole instruction's mitigating or aggravating effect.[24] Appellant's third question directly seeks to determine whether a prospective juror will give the parole instruction mitigating or aggravating effect in the context of the future dangerousness special issue. Although a capital life inmate's minimum parole eligibility is in some sense a fact, it is also codified by statute and now provided for by statute as an instruction. Because of this incorporation into the statutory framework, a prospective juror must be able to keep an open mind on the punishment special issues even after acquiring knowledge of this fact.[25] But the law neither requires nor precludes the factoring of the parole instruction into the jurors' analysis of the special issues;

so, any attempt to commit prospective jurors to giving mitigating, aggravating, or even no effect to the parole instruction is impermissible.[26] Thus, the trial judge did not err when he refused to allow appellant to ask the entire venire or various individual veniremembers the proposed questions on the law of parole. Points of error six through nineteen are overruled.

## B. Future dangerousness question

In his twenty-third point of error, appellant complains that the trial court erred when it prohibited him from asking a venireperson whether she could answer the future dangerousness issue "no" if the defendant had just been convicted of the capital murder of a young girl. Specifically, the following occurred:

> [By defense counsel] Q. That's fine. Can you imagine a set of circumstances, set of facts where you would find a person guilty of capital murder, of killing a young girl where you would answer question number one no if you thought that that is the kind of case that was—
>
> > THE COURT: Well, just disregard the—that clause, killing of a young girl. Now counsel—go ahead, [prosecutor].
> >
> > [By the prosecutor]: We'll object on the basis that [defense counsel] is trying to commit the juror to a specific course of action or a specific set of facts.
> >
> > THE COURT: Sustained.

23. *See Barajas,* 93 S.W.3d at 39.

24. *See Allridge v. State,* 850 S.W.2d 471, 480 (Tex.Crim.App.1991), *cert. denied,* 510 U.S. 831, 114 S.Ct. 101, 126 L.Ed.2d 68 (1993); *see also Standefer,* 59 S.W.3d at 180.

25. *Standefer,* 59 S.W.3d at 181; *Johnson v. State,* 982 S.W.2d 403, 405 (Tex.Crim.App. 1998).

26. *Standefer,* 59 S.W.3d at 181–182; *Raby v. State,* 970 S.W.2d 1, 3 (Tex.Crim.App.), *cert. denied,* 525 U.S. 1003, 119 S.Ct. 515, 142 L.Ed.2d 427 (1998).

Without further comment to the court, defense counsel rephrased his question and asked it again.

As we explained in *Standefer*, a commitment question is one which seeks to "commit a prospective juror to resolve, or to refrain from resolving, an issue a certain way after learning a particular fact."[27] Further, such a question is proper only when it includes such facts, and only those facts, that lead to a challenge for cause.[28]

■■■ The question that appellant wanted to ask the venireperson sought to commit her to a particular answer after learning a particular fact. Thus, as phrased, it was a commitment question. Further, that a defendant has been convicted of the capital murder of a young girl is a factor that a juror could consider in determining punishment. However, the law does not require the juror to consider the factor or to give it any weight. Therefore, regardless of her answer to the specific question asked, the prospective juror would not have been subject to a challenge for cause. The trial court did not err in refusing to allow appellant to ask an improper commitment question. Point of error twenty-three is overruled.

### C. Challenges for cause

In his twentieth, twenty-first, and twenty-second points of error, appellant complains about the trial court's failure to grant his challenges for cause to venirepersons Urbano Gonzalez and Gregory Sedbrook. Specifically, he complains that each had a bias against some phase of the law upon which he was entitled to rely.[29]

■■■ To preserve error on denied challenges for cause, an appellant must demonstrate on the record that: 1) he asserted a clear and specific challenge for cause; 2) he used a peremptory challenge on the complained-of venireperson; 3) all his peremptory challenges were exhausted; 4) his request for additional strikes was denied; and 5) an objectionable juror sat on the jury.[30] The record reflects that appellant exhausted all fifteen of his peremptory challenges, received an additional challenge, used that challenge, and then requested, but was denied, further challenges. Appellant then objected to the seating of the twelfth juror, thereby preserving any error for review on appeal.[31]

■■■ When the trial judge errs in overruling a challenge for cause against a venireperson, the defendant is harmed if he uses a peremptory strike to remove the venireperson and thereafter suffers a detriment from the loss of the strike.[32] Because the record reflects that appellant received an extra peremptory challenge in addition to the fifteen he was granted by statute, appellant can demonstrate harm only by showing that both of his complained-of challenges were erroneously denied. *Feldman*, 71 S.W.3d at 743–45; *Penry v. State*, 903 S.W.2d 715, 732 (Tex. Crim.App.), *cert. denied*, 516 U.S. 977, 116 S.Ct. 480, 133 L.Ed.2d 408 (1995).

■■■ A defendant may properly challenge any prospective juror who has a

---

27. 59 S.W.3d at 179.

28. *Id.* at 182.

29. *See* Art. 35.16(c)(2).

30. *Feldman v. State*, 71 S.W.3d 738, 743–45 (Tex.Crim.App.2002); *Green v. State*, 934 S.W.2d 92, 105 (Tex.Crim.App.1996), *cert. denied*, 520 U.S. 1200, 117 S.Ct. 1561, 137 L.Ed.2d 707 (1997).

31. *See Feldman*, 71 S.W.3d at 743–45; *Green*, 934 S.W.2d at 105.

32. *Feldman*, 71 S.W.3d at 743–45; *Demouchette v. State*, 731 S.W.2d 75, 83 (Tex.Crim. App.1986), *cert. denied*, 482 U.S. 920, 107 S.Ct. 3197, 96 L.Ed.2d 685 (1987).

bias or prejudice against any phase of the law upon which he is entitled to rely.[33] When reviewing a trial court's decision to grant or deny a challenge for cause, we look at the entire record to determine if there is sufficient evidence to support the trial court's ruling.[34] The test is whether the bias or prejudice would substantially impair the prospective juror's ability to carry out his oath and instructions in accordance with the law.[35] Before a prospective juror can be excused for cause on this basis, however, the law must be explained to him and he must be asked whether he can follow that law regardless of his personal views.[36] Finally, the proponent of a challenge for cause has the burden of establishing his challenge is proper.[37] The proponent does not meet his burden until he has shown that the venireman understood the requirements of the law and could not overcome his prejudice well enough to follow it.[38]

■ In point of error twenty-two, appellant complains about prospective juror Sedbrook. Specifically, he complains that the trial court erred in denying his challenge to Sedbrook because the prospective juror "was biased against the law that 'society' comprises persons inside prison." Specifically, appellant bases his claim on the following exchange:

> Q. [By defense counsel] You know, in answering [the future dangerousness question], would you consider whether those persons are going to commit acts of violence in prison?
>
> A. [Venireperson] I'm not sure about that one, I guess. To me when I saw

society I guess we all kind of feel—or I feel like it is people that are outside of the prison.

> THE COURT: No, that's not necessarily the meaning of the term. It can be the person's environment.

We must look at this exchange in the context of the entire conversation. Just prior to the above-quoted exchange, defense counsel asked Sedbrook for his definition of society. Sedbrook responded that society meant all individuals. When counsel asked Sedbrook if he could envision a type of society existing behind prison walls, Sedbrook said that he could. This was the extent of the conversation regarding the definition of society. After the judge's brief comment that society did not necessarily mean just the people outside of the prison, Sedbrook was never asked whether he could follow any instructions the judge gave him regarding the term.

Given the record, appellant has failed to meet his burden of showing that the law was explained to the venireperson, or that the venireperson was asked whether he could follow that law regardless of his personal views. As such, we cannot say that the trial judge erred in denying appellant's challenge for cause to veniremember Sedbrook. Point of error twenty-two is overruled.

Because the trial court did not err in denying appellant's challenge to Sedbrook, appellant cannot show on appeal that both of his complained-of challenges for cause were erroneously denied. Thus, he cannot show harm.[39] Points of error twenty and twenty-one are overruled.

---

33. Art. 35.16(c)(2).

34. *Feldman,* 71 S.W.3d at 743–45; *Patrick v. State,* 906 S.W.2d 481, 488 (Tex.Crim.App. 1995), *cert. denied,* 517 U.S. 1106, 116 S.Ct. 1323, 134 L.Ed.2d 475 (1996).

35. *Feldman,* 71 S.W.3d at 743–45.

36. *Id.*

37. *See Feldman,* 71 S.W.3d at 747.

38. *Id.*

39. *See Feldman,* 71 S.W.3d at 747.

## III. ADMISSION OF EVIDENCE

### A. Videotaped statements

#### 1. *Background*

In his first two points of error, appellant complains that the trial court erred when it overruled his objections to State's Exhibits One–A and Three because the State failed to provide the defense with a copy of either exhibit "within 20 days of commencement of the pre-trial hearing in this case," in violation of Article 38.22, § 3(a)(5).

On February 16, 2000, defense counsel filed a motion to suppress any statements appellant gave to authorities on the ground that they were not given voluntarily. In a pretrial hearing on April 28, defense counsel asked that his motion to suppress be reset to a later pretrial hearing to give him time to have appellant examined by his appointed psychologist. The trial court granted appellant's request and also set jury selection to begin on August 22.

On June 25, the trial court held a second pretrial hearing. The judge noted at this hearing that the motion to suppress was still pending and asked if the parties were ready to litigate the matter. The State responded that it was ready to proceed; however, defense counsel stated that he was not. Nonetheless, the court proceeded to hold a *Jackson v. Denno* hearing to determine whether any statements appellant had made were given voluntarily.[40] The prosecutor advised the court of the existence of two videotapes containing statements made by appellant.[41] Defense counsel objected that he did not have copies of the videotapes. He then argued that

competency was an issue in determining the voluntariness of the statements and complained that the court had not allowed him funds to have appellant evaluated. The judge reminded defense counsel that he had, in fact, provided him funds. The judge also noted that he was not concerned with the contents of the tapes and therefore saw no need to play the tapes. The judge then proceeded with the hearing on the motion to suppress.

During direct examination of the first witness, the prosecutor introduced State's (pretrial) Exhibit One, a videotaped statement that appellant had given authorities, and State's (pretrial) Exhibit Two, a videotaped walk-through of the crime scene. After the State questioned its remaining witnesses and rested, the prosecutor urged the court to overrule appellant's motion to suppress. Defense counsel argued in response:

> Your Honor, first of all, 38.22 does provide that the—prior to the statement not later than the 20th day before the date of the proceeding the attorney representing the defendant is to be provided with a true, complete and accurate copy of the recordings, and I was not given a complete—or any copies of the recordings. Apparently they have been available since January.

The Court responded, "You will get to look at them." Counsel further asked the court to reserve ruling on the motion until he had a chance to have appellant evaluated by the defense expert. He also asked for time to review blood evidence that had been taken from appellant. The court overruled the motion to suppress.[42]

---

40. *See Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).

41. The court also reviewed the voluntariness of two written statements appellant gave the authorities (identified as State's (pretrial) Exhibits Three and Four). However, the written

statements are not at issue in these two points of error.

42. We will assume, without deciding, that appellant properly objected at the pretrial hearing.

On September 12, the first day of trial, the videotaped walk-through of the crime scene (State's (pretrial) Exhibit Two) was offered and admitted into evidence as State's (trial) Exhibit Three. Defense counsel reiterated many of the objections he had made previously but did not reassert the Article 38.22, § 3(a)(5) objection he made at the pretrial hearing on the motion to suppress. The next day, the State had a witness identify State's (trial and pretrial) Exhibit One, appellant's videotaped statement. However, when the prosecutor offered the exhibit into evidence, defense counsel asked the court to withhold its ruling until counsel had an opportunity to visit with the court. The court granted counsel's request, explaining to the jury that certain preliminary requirements must be met before a tape can be admitted, and the court had to review the tape before it could rule on the tape's admissibility. State's (trial) Exhibit One was never admitted into evidence at trial.

On September 14, the State identified State's (trial) Exhibit One–A through its witness and offered it into evidence. The trial court explained that the exhibit was a redacted version of appellant's original videotaped statement (State's (trial and pretrial) Exhibit One) which was prepared by defense counsel at the court's direction. Defense counsel objected to the exhibit on the same grounds that he had objected to State's Exhibit One. The trial judge overruled counsel's objections and admitted the exhibit.[43]

Relying upon *Tigner v. State*[44] and commentary by Professors Dix and Dawson,[45] appellant contends that § 3(a)(5) applies to pretrial hearings and that the State's failure to provide the videotapes within twenty days of the pretrial hearing precludes their admission at trial. Relying upon *Lane v. State*[46] and Article 28.01, § 2, the State contends § 3(a)(5) does not apply to proceedings occurring before voir dire.

### 2. *Analysis*

Article 38.22, § 3(a)(5) provides that:

> No oral or sign language statement of an accused made as a result of custodial interrogation shall be admissible against the accused in a criminal proceeding unless:
>
> * * *
>
> (5) not later than the 20th day before the date of the proceeding, the attorney representing the defendant is provided with a true, complete, and accurate copy of all recordings of the defendant made under this article.

Under our decision in *Boykin v. State*, we interpret a statute in accordance with the plain meaning of its language unless the language is ambiguous or the plain meaning leads to absurd results that the Legislature could not possibly have intended.[47] In accordance with those standards, we have twice before construed the language of this provision. In *Tigner*, we construed the word "criminal proceeding" to encompass voir dire as part of the trial in a

---

**43.** We will assume, without deciding, that appellant's objections to exhibit One and One–A at trial were sufficiently clear incorporations of his § 3(a)(5) objections at the pretrial hearing to make the trial court aware that he was lodging a § 3(a)(5) complaint at trial.

**44.** 928 S.W.2d 540 (Tex.Crim.App.1996).

**45.** George E. Dix and Robert O. Dawson, TEXAS PRACTICE: CRIMINAL PRACTICE

AND PROCEDURE, § 13.104 (1995); *see also* George E. Dix and Robert O. Dawson, TEXAS PRACTICE CRIMINAL PRACTICE AND PROCEDURE, 2nd Ed., § 13.166 (2001).

**46.** 933 S.W.2d 504 (Tex.Crim.App.1996)(plurality opinion).

**47.** 818 S.W.2d 782, 785 (Tex.Crim.App.1991).

criminal prosecution.[48] In so doing, we relied upon the language of the statute, the legislative history, and commentary from Professors Dix and Dawson's treatise on criminal procedure.[49] We observed that the phrase "criminal proceeding" is a "very broad" term, "conceivably extending to all phases of a criminal prosecution."[50] After examining the legislative history, we found that the purpose of the twenty-day requirement was to give defense counsel "adequate time to prepare possible challenges to the admissibility or credibility" of the recorded statements at issue.[51] We referred to one senator's remarks that the time requirement would enable testing of the recording to determine whether any splicing, alteration, or other improprieties had occurred.[52] The provision's author indicated that the twenty-day requirement would enable counsel to have a copy of the recording with ample time to plea bargain.[53] We found that these purposes would be frustrated in many cases if defense counsel were unable to obtain a copy of the recording before voir dire and that defense counsel might be precluded from questioning the venire about the application of Article 38.22.[54] Finally, we cited Professors Dix and Dawson's opinion that the term "proceeding" includes a pretrial hearing "if there is one."[55]

In *Lane*, a plurality of this Court construed the word "provided" and held that actual delivery of the recording was unnecessary—defense counsel was provided with the recording when it was made available to him.[56] The opinion turned to whether counsel had been provided the recording in a timely fashion.[57] It held that the defense counsel procedurally defaulted any claim that the recording was not provided within twenty days *of the pretrial hearing* because he failed to object on that basis at the pretrial hearing.[58] The plurality remarked that, had he objected, "he may have been entitled to a twenty-day continuance of the hearing to examine copies of the recordings."[59]

■ Although we have not yet held that § 3(a)(5) applies to pretrial hearings, our prior opinions have certainly laid the groundwork for doing so. Such a holding would be consistent with the language of the statute, which employs the broad term "criminal proceeding." The legislative history regarding the need for time to prepare challenges to the recording also supports the notion that such time to prepare should be given before the pretrial hearing, where such challenges will take place. And of course, such a holding would also be consistent with Professors Dix and Dawson's commentary on the issue.

The State contends that it should not be required to provide recordings twenty days before the pretrial hearing because the provision of recordings twenty days before voir dire gives the defendant sufficient time to evaluate and test the evidence. That contention ignores the purpose of having a pretrial hearing on a suppression of evidence question—to settle the issue before trial. This purpose be-

---

48. 928 S.W.2d at 546.

49. *Id.* at 543–546,

50. *Id.* at 544.

51. *Id.* at 545.

52. *Id.*

53. *Id.*

54. *Id.*

55. *Id.* (citing Dix and Dawson, CRIMINAL PRACTICE AND PROCEDURE, § 13.104).

56. 933 S.W.2d at 516.

57. *Id.*

58. *Id.*

59. *Id.*

comes especially salient for the plea-bargaining defendant because his appellate rights are limited, one category of appealable issues being motions that have been raised and ruled upon before trial.[60] The State also suggests that defendants can manipulate the system because they can wait until ten days before the pretrial hearing to file a motion to suppress—thereby making it impossible for the State to give the requisite twenty days notice. But the State is not entitled to wait for the defendant to file a motion to suppress to turn over a copy of the recording. If there had been no pretrial hearing and the defendant had first objected to the evidence at trial, the State would not be excused from the twenty-day requirement simply because it did not know the defendant would object.[61] The same reasoning applies to pretrial hearings. The State possesses the recording and knows that it may offer the oral statement at trial, and therefore, the State knows that the oral statement's admissibility may be litigated at the pretrial hearing.

Moreover, the State misinterprets Article 28.01, as that statute precludes the filing of any motions less than seven days before the pretrial hearing but only if the defendant has had at least ten days in which to file motions.[62] In other words, the statute contemplates that, if the defendant has at least seventeen days notice of the pretrial hearing, then he must file pretrial motions at least seven days in advance of that hearing. It is possible

that the trial court could provide such short notice of the pretrial hearing that there would not be twenty days from the time of notice to the time of hearing, either because the trial court gives at least seventeen but less than twenty days notice or because the trial court decides to waive the seven-day filing requirement as to the defendant. Nevertheless, such an occurrence is not attributable to the defendant, and in any event, can be remedied without significant prejudice to the State, as will be explained below.

The State also contends that our decision in *Lane* favors the State's interpretation because that decision showed that we are "inclined to construct section 3(a) in a manner that will not require exclusion of evidence when the defense has shown no appreciable harm." In *Lane*, we indicated that the purpose of the statute can guide interpretation of ambiguous language,[63] but the above discussion shows that applying the twenty-day requirement to pretrial hearings actually furthers the purpose of giving the defendant adequate notice to prepare a challenge to the evidence and to conduct plea negotiations. And in fact, *Lane* recognized the possibility, albeit in *dicta*, of the twenty-day provision applying to pretrial hearings.[64]

Finally, one might contend that evidence is not really "admitted" at pretrial hearings, as pretrial hearings are not governed by the rules of evidence in the first place, so the statute must refer to the trial phase of the prosecution. While it is now true

**60.** *See* TEX. R. APP. P. 25.2(b)(3).

**61.** *See Tigner,* 928 S.W.2d at 546 n. 8.

**62.** Article 28.01, § 2, which provides in relevant part:

When a criminal case is set for such pretrial hearing, any such preliminary matters not raised or filed seven days before the hearing will not thereafter be allowed to be raised or filed, except by permission of the

court for good cause shown; provided that the defendant shall have sufficient notice of such hearing to allow him not less than 10 days in which to raise or file such preliminary matters.
*See also Postell v. State,* 693 S.W.2d 462, 465 (Tex.Crim.App.1985).

**63.** 933 S.W.2d at 516.

**64.** *Id.* at 516.

that the rules of evidence do not apply to suppression hearings,[65] at the time the twenty-day provision was added to Article 38.22, the rules of evidence *did* apply to such hearings.[66] And while the rules of evidence, *in general,* do not apply to suppression hearings, the statute has priority over the rules,[67] and thus carves out an exception in this instance. We conclude that § 3(a)(5) applies to pretrial hearings.

■ Even though the statute applies to pretrial hearings, one might contend that the statute does not apply here because the trial court never formally admitted the oral statements into evidence, did not examine the recordings, and did not inquire into the statements' contents. But the oral statements were the subject of a voluntariness claim. Where the oral statement is the subject of the hearing, we will not engage in hairsplitting and perhaps confusing distinctions concerning whether the statement was "admitted" at the pretrial proceeding. We believe the legislative purpose of giving defense counsel time to prepare is effectuated by preventing the trial court from considering the statement for any purpose.

■ Having held that the statute applies to pretrial hearings, and to any use of the statement at such hearings, we turn next to the effect of the statute's application. Appellant contends that the failure to provide a copy of the recording twenty days in advance of the pretrial hearing renders the oral confession inadmissible at trial. We disagree. Isolating the pertinent language shows the provision to read as follows: "No oral ... statement ... shall be admissible against the accused in a criminal proceeding unless ... not later

than the 20th day before the date of *the* proceeding [a copy of recording is provided]" (emphasis, ellipses, and bracketed material added). The plain meaning of the statutory language is that "the proceeding" in § 3(a)(5) is the *same* proceeding as "a criminal proceeding" in the introductory clause of § 3(a). The proceeding to which the twenty-day requirement applies is the same proceeding at which the evidence is rendered inadmissible, when there is no compliance. Thus, failure to provide the recording twenty days before the pretrial hearing renders the oral confession inadmissible *at the pretrial hearing.* The State complied with the twenty-day requirement with regard to trial, and so, the oral confession was not rendered inadmissible at trial under this provision.

As we suggested in *Lane,* the practical remedy for the failure to comply with § 3(a)(5) with regard to the pretrial hearing is a twenty-day continuance of the hearing. Essentially, the defendant has the right to prevent the trial court from considering the admissibility of the oral confession until twenty days after a copy of the recording is provided. Appellant's reliance upon Professors Dix and Dawson is a double-edged sword because, in the second edition of their treatise, they express approval of the remedy suggested in *Lane:* "as *Lane* suggests, the most appropriate remedy would seem to be to give the defendant a right to delay of the pretrial hearing to enable the defense to make use of the copies for purposes of addressing the pretrial hearing issues."[68]

■ Because a violation of § 3(a)(5) is statutory, the appropriate harm analysis is the standard found in Rule 44.2(b).[69] In

**65.** *Granados v. State,* 85 S.W.3d 217, 227 (Tex.Crim.App.2002).

**66.** *See* former TEX. R. CRIM. EVID. 1101(d)(4)(1988).

**67.** *See* TEX. R. EVID. 101(c).

**68.** Dix and Dawson, 2nd ed., § 13.166 n. 3.

**69.** "Any other error, defect, irregularity, or variance that does not affect substantial rights must be disregarded." TEX. R. APP. P. 44.2(b).

interpreting former Rule 81(b)(2), *Tigner* held that the focus of the harm analysis is on the harm flowing from the erroneous admission of the evidence.[70] We agree that the focus of a harm analysis for this statute remains unchanged under Rule 44.2(b), but in this case, the erroneous use of the evidence occurred not at trial, but at the pretrial hearing. Appellant reurged his objection to Exhibit One and was allowed to litigate further its admissibility at a time when the twenty-day requirement had long since been fulfilled. Defense counsel was also given the opportunity to edit that exhibit so that a redacted version, rather than the original, was played before the jury. Although exhibit three's admissibility was not relitigated, appellant had the opportunity at trial to lodge a § 3(a)(5) objection to its admissibility and did not do so.[71] We do not agree with appellant's contention that the error at the pretrial hearing requires the trial court to bar admission of the evidence at trial, and appellant offers no reason for us to conclude that he was otherwise harmed by the error. On this record, the error clearly appears to us to be harmless because appellant was given a timely opportunity to relitigate the admissibility of the evidence. The State points to the strength of other evidence supporting the conviction as rendering the error harmless, and we agree that the strength of other evidence is relevant to a harm analysis, but even without such evidence, we conclude the error is harmless here. Points of error one and two are overruled.

## B. Videotape of prison facilities

Appellant complains in points of error three, four, and five that the trial court erred under Texas Rule of Evidence 403, the Eighth Amendment to the United States Constitution, and the Due Process Clause of the Fourteenth Amendment when it held inadmissible Defendant's Exhibit Two, a videotape depicting the administrative segregation facilities of a Texas prison unit. Appellant called psychologist Windell Dickerson to testify at the punishment stage of trial. During direct examination, Dr. Dickerson identified a fifty-seven minute videotape that showed "the physical facilities of an administrative segregation unit in the Texas Department of Criminal Justice, and the buildings in which those units are housed." He testified that the video "[c]onceivably [ ] could" assist the jury "in determining whether or not a prison system can, in fact, control [appellant.]" No evidence was offered that the circumstances portrayed in the videotape would specifically apply to appellant in his situation.

Outside the presence of the jury, the State objected that the tape was not relevant, that it was more prejudicial than probative under Rule 403, that it was cumulative of testimony Dickerson had already given, and that it was long and did not add anything that would assist the jury. Defense counsel responded that the tape was not cumulative and would aid the jury in answering the future dangerousness issue because it showed generally how prisoners are moved, housed, and fed, and how they go to the nurse or to recreate. Defense counsel also offered to cut the tape down to a length of ten to fifteen minutes.

Questioning the relevancy of the videotape, the court sustained the State's objection, noting that the tape showed only one

**70.** 928 S.W.2d at 547–548.

**71.** Arguably, the failure to lodge an objection to the admission of exhibit three at trial procedurally defaults any error in that regard. Due to our disposition on the harm analysis, we do not address this potential preservation issue.

aspect of prison life and did not portray the prison system's entire method of operation. The judge further held that any probative value the tape had was substantially outweighed by the danger of misleading the jury as to all aspects of the Texas prison system.

■■■ On appellate review a trial court's admission or exclusion of evidence is subject to an abuse of discretion standard.[72] If the trial court's decision was within the bounds of reasonable disagreement we will not disturb its ruling.[73]

■■■■ Texas Rule of Evidence 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Further, except as otherwise provided by statute or rule, a jury is entitled to have before it "all possible relevant information about the individual defendant whose fate it must determine."[74] The videotape was not offered as information about the individual defendant or about how the individual defendant might be handled. Rather, as the judge noted, it portrayed only one aspect of an entire system and offered only general information about some procedures used in that system. That others have been controlled in the prison system or that certain procedures are in place without specifically connecting those procedures to appellant was not evidence of consequence to the jury's factual determination of whether *appellant* would pose a continuing threat to society.[75]

Even assuming that the evidence was minimally relevant, however, the trial court was within its discretion to exclude the evidence pursuant to Rule 403. Under that rule, relevant evidence may be excluded if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence."[76] Rather than assist in the jury's factual determination of the danger appellant posed to society, the videotape might have confused and distracted the jury from its factfinding task. Thus, it was reasonable for the trial court to conclude that the risks of confusing the jury substantially outweighed any probative value the video might have. Under these circumstances, the trial court did not abuse its discretion in excluding the exhibit. Likewise, the court's exclusion of the tape did not violate Eighth and Fourteenth Amendment principles. Points of error three through five are overruled.

## C. Written confession

Appellant asserts in his twenty-fourth and twenty-fifth points of error that the trial court erred in admitting into evidence his second written statement (State's Exhibit Five) because he made the statement involuntarily in violation of Article I, section 10 of the Texas Constitution and the Due Process Clause of the Fourteenth Amendment to the United States Constitution.[77] Specifically, appellant states that he had expressed his desire to die rather than spend his life in prison. He contends

---

**72.** *Rachal v. State*, 917 S.W.2d 799, 816 (Tex. Crim.App.), *cert. denied*, 519 U.S. 1043, 117 S.Ct. 614, 136 L.Ed.2d 539 (1996).

**73.** *Id.*

**74.** *See Matson v. State*, 819 S.W.2d 839, 850 (Tex.Crim.App.1991).

**75.** *See* Art. 37.071 § 2(b)(2).

**76.** *See* Tex.R. Evid. 403.

**77.** Appellant does not complain about the voluntariness of either of his oral statements or his first written statement.

that the officer taking the statement used this knowledge to coerce appellant into giving the second statement—which solidified the evidence of the aggravating element of capital murder—by promising appellant that the confession would result in the State seeking the death penalty for the offense.

 "[A] defendant in a criminal case is deprived of due process of law if his conviction is founded, in whole or in part, upon an involuntary confession, without regard for the truth or falsity of the confession, and even though there is ample evidence aside from the confession to support the conviction."[78] The defendant has a right to object to the use of the confession and the right to a hearing to determine whether the confession was voluntary.[79] The trial court is the sole factfinder at a *Jackson v. Denno* hearing and may choose to believe or disbelieve any or all of the witnesses' testimony.[80] This Court is not at liberty to disturb any finding which is supported by the record.[81]

 During the hearing on appellant's motion to suppress, Deputy Sheriff Larry Pope testified about his investigation of the case which led to appellant's arrest and about the circumstances surrounding the taking of the oral and written confessions. On cross-examination, Pope agreed that appellant had made comments about wanting to die rather than spend his life in prison. However, Pope contested defense counsel's interpretation of the comments as showing mental instability. Rather, Pope explained to the court that he took the comments as appellant trying to appear "con tough." Pope also stated that appellant told him that he had no remorse

for the crime. Texas Ranger John Allen, who also participated in some of the interviewing process, did not recall appellant stating at any time that he wanted to die. Appellant did not call any witnesses for the hearing.

After the conclusion of the testimony, the trial judge heard arguments. He then entered findings of fact and conclusions of law that appellant freely and voluntarily gave both oral and written statements after intelligently and voluntarily waiving his rights. Because the record evidence supports the trial court's conclusions, we hold the trial court did not abuse its discretion in denying appellant's motion to suppress. Points of error twenty-four and twenty-five are overruled.

## IV. CONSTITUTIONALITY OF STATUTE

In points of error twenty-eight through thirty-six, appellant challenges the constitutionality of Article 37.071. Specifically, appellant asserts that Article 37.071 is unconstitutional for the following reasons:

(Point 28) The future dangerousness issue is vague because it does not define the terms "probability," "criminal acts of violence," and "continuing threat to society." (Point 29) The mitigation issue does not provide for meaningful appellate review. (Point 30) The mitigation issue fails to place a burden of proof on the State. (Point 31) The "10–12 rule" violates constitutional principles. (Point 32) Failure to allow holdout jurors to know the consequences of their actions violates the Eighth Amendment. (Point 33) The mitigation issue allows open-

**78.** *Jackson v. Denno,* 378 U.S. 368, 376, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).

**79.** *See id.* at 377.

**80.** *Dewberry v. State,* 4 S.W.3d 735, 747–48 (Tex.Crim.App.1999), *cert. denied,* 529 U.S. 1131, 120 S.Ct. 2008, 146 L.Ed.2d 958 (2000).

**81.** *Id.*

ended discretion. (Point 34) The mitigation definition improperly limits the concept of mitigation. (Point 35) The death penalty, as presently administered, violates the Eighth Amendment ban against cruel and unusual punishment. (Point 36) The death penalty, as presently administered, violates the Texas Constitution's ban against cruel or unusual punishment.[82]

We have addressed and rejected all of these challenges before, and appellant has given us no reason to revisit these decisions here.[83] Points of error twenty-eight through thirty-six are overruled.

We affirm the judgment of the trial court.

JOHNSON, J., filed a concurring and dissenting opinion.

MEYERS and PRICE, JJ., concurred in the result.

JOHNSON, J., concurring and dissenting.

I respectfully dissent to the disposition of points of error six through nineteen for the reasons stated in my opinion in *Standefer v. State*, 59 S.W.3d 177, 186–87 (Tex. Crim.App.2001). As to the remainder of the points of error, I concur in the judgment of the Court.

---

**82.** We have paraphrased appellant's points to convey the thrust of his complaints, as developed in the argument sections relating to each point of error. Although each point was argued separately, we find it convenient to group discussion of them here.

**83.** *See Feldman*, 71 S.W.3d at 757; *Cannady v. State*, 11 S.W.3d 205, 214 (Tex.Crim.App.), *cert. denied*, 531 U.S. 850, 121 S.Ct. 125, 148 L.Ed.2d 80 (2000); *Ladd v. State*, 3 S.W.3d 547, 572–75 (Tex.Crim.App.1999), *cert. de-*

*nied*, 529 U.S. 1070, 120 S.Ct. 1680, 146 L.Ed.2d 487 (2000); *McFarland v. State*, 928 S.W.2d 482, 498–99, 518–21 (Tex.Crim.App. 1996), *cert. denied*, 519 U.S. 1119, 117 S.Ct. 966, 136 L.Ed.2d 851 (1997); *Lawton v. State*, 913 S.W.2d 542, 555–60 (Tex.Crim.App. 1995), *cert. denied*, 519 U.S. 826, 117 S.Ct. 88, 136 L.Ed.2d 44 (1996).