

NUMBER 13-14-00422-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

**DYLAN A. TRISTANI,**                                                    **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                    **Appellee.**

### On appeal from the County Court at Law No. 1
### of Victoria County, Texas.

# MEMORANDUM OPINION

### Before Justices Rodriguez, Benavides, and Perkes
### Memorandum Opinion by Justice Benavides

A Victoria County jury convicted appellant Dylan A. Tristani of driving while intoxicated, a Class B misdemeanor. *See* TEX. PENAL CODE ANN. § 49.04(a) (West, Westlaw through 2015 R.S.). By two issues, Tristani asserts that the trial court reversibly erred by: (1) admitting evidence of Tristani's post-*Miranda* invocation of his right to counsel; and (2) prohibiting a voir dire question concerning prior experience with

assessing punishment.    We affirm.

## I.    BACKGROUND

In the early-morning hours of July 22, 2012, police officers received a call regarding an unconscious driver stopped in the drive-through lane of the McDonald's on Navarro Street in Victoria.    Officer Jeff Strauss responded first to the scene, and upon arriving, observed Tristani in the driver's seat of a stopped black pickup along with Michael Birdwell and Trevor Tristani ("Trevor") were in the truck seated as passengers.    According to Officer Strauss, all three were "passed out or sleeping" inside the truck.    Officer Strauss subsequently placed Tristani under arrest for driving while intoxicated after performing various field sobriety tests on Tristani, which provided signs of intoxication.    The jury viewed video evidence of the investigation recorded from Officer Strauss's patrol unit that depicted:    (1) Officer Strauss's initial arrival at the McDonald's; (2) field sobriety tests that Officer Strauss performed on Tristani; and (3) eventual arrest and transport of Tristani to jail.

Officer Adam Nieto, who also responded to the McDonald's that morning, testified that he observed Tristani speaking with Officer Strauss, and that Tristani exhibited signs of intoxication, namely through his slurred speech.    Officer Nieto also recalled that he had asked Tristani for his driver's license, but Tristani handed him a credit card instead. Officer Nieto testified that Birdwell and Trevor Tristani were eventually arrested for public intoxication, a Class C misdemeanor.    *See id.* § 49.02 (West, Westlaw through 2015 R.S.).

Dylan Tristani and Birdwell also testified at trial.    According to Tristani, he was the designated driver for the trio that evening and drank only Coca-Cola that night.    Birdwell

2

confirmed that Tristani was the designated driver, and did not observe Tristani consumer any alcohol. Both Tristani and Birdwell admitted to being at the Cactus Canyon nightclub that evening, but neither could recall anything that happened after they left the parking lot of Cactus Canyon.

After a three-day trial, the jury found Tristani guilty of driving while intoxicated. The trial court assessed punishment at 180 days imprisonment in the county jail along with an $800.00 fine; however, the trial court placed Tristani on community supervision for two years along with various conditions and terms associated with the community supervision. This appeal followed.

## II.    ADMISSIBILITY OF EVIDENCE

By his first issue, Tristani asserts that video evidence admitted following his invocation of his right to counsel violated his right to due process.

## A.    Standard of Review

We review a trial court's decision on the admissibility of evidence for an abuse of discretion and will not reverse the ruling if it is within the zone of reasonable disagreement. *Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011). If a trial court's evidentiary ruling is correct under any applicable theory of law, it will not be disturbed if the trial court gave a wrong or insufficient reason for the ruling. *See De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009). We note that this issue is before us on an evidentiary ruling of admissibility during trial, and not on a ruling on a formal motion to suppress. Accordingly, we will review this issue under an abuse of discretion standard. *See Tillman*, 354 S.W.3d at 435.

3

**B.      Applicable Law**

Under the Fifth Amendment to the United States Constitution, in order to effectuate the right against self-incrimination, once a suspect has invoked his right to counsel, all interrogation by the police must cease until counsel is provided or until the suspect himself re-initiates conversation.   *Dinkins v. State*, 894 S.W.3d 330, 350–51 (Tex. Crim. App. 1995) (internal citations omitted).   The right to counsel is considered invoked where a person indicates he desires to speak to an attorney or have an attorney present during questioning.   *Id.* at 351.   Such an invocation must be clear and unambiguous, and the mere mention of the word "attorney" or "lawyer" without more does not automatically invoke the right to counsel.   *Id.*

When reviewing alleged invocations of the right to counsel, we typically look at the totality of the circumstances surrounding the interrogation, as well as the alleged invocation, in order to determine whether a suspect's statement can be construed as an actual invocation of his right to counsel.   *Id.*   The inquiry into whether a suspect has invoked his right to counsel is an objective one and must be construed to be, at a minimum, an expression of a desire for the assistance of an attorney, without ambiguity or equivocation.   *See id.* (citing *Davis v. U.S.*, 512 U.S. 452, 459 (1994)).

**C.      Discussion**

Tristani argues that he articulated his desire to invoke his right to counsel "immediately on the heels of the *Miranda*[1] warnings and in response to Officer Strauss's question as to whether he wished to waive those rights and answer questions."   After

---

[1] *See Miranda v. Arizona*, 384 U.S. 436, 469–73 (1966).

4

looking to the totality of the circumstances surrounding the interrogation, we disagree.

The relevant portion of the video contains audio of Officer Strauss reading Tristani his *Miranda* rights twice and then asking Tristani whether he would be willing to answer some questions related to his arrest. Tristani responded by stating: "I guess, I'd, uh, I guess I'd like a lawyer." After reviewing this portion of the video, the trial court overruled Tristani's objection.

The facts of the instant case are analogous to a decision by the Austin Court of Appeals in *Dalton v. State*. *See* 248 S.W.3d 866, 868–70 (Tex. App.—Austin 2008, pet. denied), *cert. denied*, 558 U.S. 1013 (2009). In *Dalton*, Austin police responded to a residence to assist emergency medical technicians with a deceased female found inside of the residence. *Id.* at 868. As police arrived, they encountered Terry Michael Dalton, who matched the description of the possible suspect involved in the decedent's death. *Id.* Police then handcuffed and frisked Dalton and placed him in the back seat of the squad car. *Id.* While in the squad car, a police officer advised Dalton of his rights, and Dalton acknowledged that he understood them. *Id.* The officer testified that he considered Dalton under arrest at the time. *Id.* Then, Dalton asked the police officer: "When you give my friends the keys, could you tell them to get me a lawyer?" *Id.* After that, Dalton continued to converse with officers and eventually asked a police officer whether he could get a lawyer. *Id.* Later, Dalton conversed with officers from the backseat of the squad car and asked the officers several questions, including "about what was going to happen." *Id.* at 869.

Once at the police station, detectives read Dalton his rights, and Dalton confirmed that he understood them. *Id.* Then, one detective asked Dalton "if he would be willing

5

to talk" about what had happened." *Id.* Dalton replied by asking, "Well, should I get a lawyer first?" Dalton then continued to ask the detective other questions and began describing the relationship he had with his wife, the decedent, and how his wife "had threatened him and sat on his chest trying to suffocate him." *Id.* Dalton then told the detective, "I guess I should get a lawyer before I really get into what happened." *Id.* Dalton asked the detective to again explain the process of getting a lawyer, at which point the detective tried to clarify whether Dalton still wanted to speak to him or whether he was invoking his right to counsel and terminate the interview. *Id.* At this point, Dalton responded by stating "I should get one, probably. I guess so. I mean, I guess I should do it. I suppose I should get a lawyer. Oh, yeah, I want one," while also saying that he "didn't mind talking" to the detective. *Id.* The detective then asked again, "Yes you want a lawyer?" and Dalton responded by saying "Yes sir." The *Dalton* Court upheld a trial court's findings that Dalton's statements in the back of the squad car, as well as discussions with the detective at the police station were not direct, unequivocal requests for counsel. *Id.* at 873. The *Dalton* court further upheld the trial court's finding that only when Dalton responded to the detective in the affirmative when asked whether he wanted a lawyer was a proper invocation of his right to counsel. *Id.*

Turning to the facts of this case, the trial court, as in *Dalton*, found that Tristani did not articulate his desire to have counsel sufficiently or clearly that a reasonable police officer in the circumstances would conclude that he invoked his right to counsel by virtue of his equivocal statement: "I guess, I'd, uh, I guess I'd like a lawyer." Nothing in the video evidence demonstrates Tristani's clear expression of a desire for the assistance of an attorney, without ambiguity or equivocation. *See Dinkins*, 894 S.W.3d at 351.

6

Instead, it shows equivocation and ambiguity, just as in *Dalton*.[2] *See* 248 S.W.3d at 873. Furthermore, Officer Strauss's comments to his fellow officer to not speak to Tristani because Officer Strauss believed that Tristani invoked his right to counsel is of no consequence to this analysis because our inquiry of this issue is an objective one that helps "avoid difficulties of proof and to provide guidance to officers conducting interrogations." *Davis*, 512 U.S. at 458–59. Accordingly, after viewing the totality of the circumstances, we hold that the trial court did not abuse its discretion by admitting the video evidence in this case. Tristani's first issue is overruled.

### III. VOIR DIRE

By his second issue, Tristani contends that the trial court abused its discretion by prohibiting his trial counsel from asking a proper question during voir dire.

#### A. Standard of Review and Applicable Law

The trial court has broad discretion over the process of selecting a jury. *Sells v. State*, 121 S.W.3d 748, 755 (Tex. Crim. App. 2003). Without the trial court's ability to impose reasonable limits, voir dire could go on indefinitely. *Id.* Therefore, we leave to the trial court's discretion the propriety of a particular question and will not disturb the trial court's decision absent an abuse of discretion. *Id.* A trial court abuses its discretion in this circumstance when it prohibits a proper question about a proper area of inquiry. *Id.* at 755–56. A question is proper when it seeks to discover a juror's views on an issue applicable to the case. *Id.* at 756. An otherwise proper question is impermissible,

---

[2] We note that the evidence shows that after making the "I guess, I'd, uh, I guess I'd like a lawyer" statement, Tristani continued to speak to the officers about a variety of topics, including whether: (1) the officers could take him home; (2) Officer Strauss could scratch Tristani's nose because it itched; and (3) McDonald's was going to refund his money.

however, if it attempts to commit the juror to a particular verdict based on particular facts. *Barajas v. State*, 93 S.W.3d 36, 38 (Tex. Crim. App. 2002). A voir dire question that is so vague or broad in nature as to constitute a global fishing expedition is also not proper and may be prevented by the trial court. *Id.* at 39.

## B. Discussion

During voir dire, Tristani's counsel asked the venire whether any of them had served on a criminal jury in the past. One prospective juror responded in the affirmative and the following exchange ensued:

[TRISTANI'S COUNSEL]: [. . . .] Yes, sir. Did -- were you on a criminal jury before?

VENIRE PERSON: Yes.

[TRISTANI COUNSEL]: Were you the foreman?

VENIRE PERSON: I can't recall.

[TRISTANI'S COUNSEL]: Okay. Was it a felony or misdemeanor?

VENIRE PERSON: I believe it was a felony.

[TRISTANI'S COUNSEL]: Okay. Did y'all reach a verdict?

VENIRE PERSON: Yes.

[TRISTANI'S COUNSEL]: Okay. And did the court or the jury do the punishment?

VENIRE PERSON: I don't recall.

[TRISTANI'S COUNSEL]: Okay. And Maresh. Okay. Sir, you were --

THE COURT: [Tristani's counsel], if you and opposing counsel approach, please.

(Discussion at the Bench.)

THE COURT: You can't ask that. You can ask it saying did y'all

serve.

[TRISTANI'S COUNSEL]: I shouldn't ask that last question?

(Discussion at the Bench)

[TRISTANI'S COUNSEL]: I want to object to not being able to ask that question.

THE COURT: [Tristani's counsel] asked a question of the jurors, have you been on a jury. The answer was yes. A next question was, did you reach a verdict? The answer was, yes. The next question became did you or did a judge assess the penalty. I've admonished [Tristani's counsel] that that indicates that verdict was a guilty in nature and I'm just simply admonished him that you cannot ask what the verdict was. He's getting awfully close. He has asked the question. It was answered, and I think we're fine right now especially since the State didn't object. But your objection is to what?

[TRISTANI'S COUNSEL]: Well, if the Court is ordering me not to ask that question, I'm objecting to the Court order directing me to not ask a proper question on voir dire.

THE COURT: Okay. The question has been asked. I'm telling you if you're planning on asking it again.

[TRISTANI'S COUNSEL]: I am.

THE COURT: Then your objection is overruled. You can ask have you been on the jury. You can ask if you've been a foreman. You can ask if verdicts have been reached.

. . . .

[TRISTANI'S COUNSEL]: All right. Just so—just making sure I'm preserved, the question I wanted to ask was, did the court or jury assess punishment, and Your Honor is instructing me not to ask that question, correct?

THE COURT: That is correct.

[TRISTANI'S COUNSEL]: Okay.

THE COURT: Because it implies as to what the verdict was.

9

The Texas Court of Criminal Appeals held that there is "no absolute legal impediment" to posing a question during voir dire into what specific verdict, if any, prospective jurors had reached in the course of their prior jury service; however, a trial court is within its discretion to limit such questioning "in the interest of placing reasonable limitations upon the length of voir dire. . . ." *Blackman v. State*, 414 S.W.3d 747, 760 n.7 (Tex. Crim. App. 2013). Here, the trial court prohibited Tristani's counsel from asking a venire member about what specific verdict was reached in his prior criminal jury service. This prohibition was not based upon limiting the length of voir dire, but rather upon the trial court's erroneous legal conclusion that such questioning was improper during voir dire. In light of *Blackman*, we hold that the trial court abused its discretion in prohibiting Tristani's lawyer from asking venire members about the specific verdicts they reached in their prior jury service. *See id.*

Because we conclude that the trial court abused its discretion, we now analyze for harm. *See* TEX. R. APP. P. 44.2. The court of criminal appeals recently held that a trial court's error in prohibiting a defendant's counsel from asking proper question of the venire regarding legal standards of proof and contrasting those standards with the beyond-a-reasonable-doubt standard was non-constitutional error because it did not mean that counsel was foreclosed from explaining the concept of beyond a reasonable doubt and exploring the veniremembers' understanding and beliefs on the standard through other methods. *See Easley v. State*, 424 S.W.3d 535, 541 (Tex. Crim. App. 2014). We find the reasoning set forth in *Easley* applicable to this case because Tristani's inability to ask one question regarding a specific verdict reached by a venire member in prior jury service

10

is not "so substantial as to warrant labeling the error as constitutional error." *See id.* Therefore, we decline Tristani's invitation to analyze this issue for harm under constitutional error and will analyze for harm under the non-constitutional error standard. *See* TEX. R. APP. P. 44.2(b).[3]

Under a non-constitutional error analysis, any other error, defect, irregularity, or variance that does not affect an appellant's substantial rights must be disregarded. *Id.* In this case, with the exception of the specific-prior-verdict error, Tristani's counsel was given the ability to voir dire the venire on a wide range of topics, including the beyond-a-reasonable-doubt standard of proof, evidentiary standards, search warrants, credibility of police officers, and prior jury service of venire members (except the verdict reached in each previous case). These wide-ranging topics of questions weighs against finding harm because these questions weighed against the one question that Tristani was prevented from asking did not affect his substantial rights to conduct a robust voir dire.

Additionally, the issue of whether the trial court or jury assessed punishment is irrelevant to this case because Tristani elected pre-trial to have the trial court assess punishment. As a result, discovering whether the trial court or the jury assessed punishment in prior cases that the venire members sat on is of no consequence to the factual or procedural posture of this case, and thus does not affect his substantial rights. Finally, we note that the evidence supporting the jury's verdict was substantial, as jurors were able to view video evidence of the scene, including Tristani's performance on field

---

[3] As in *Easley*, we likewise recognize that there may be cases in which a judge's limitation on voir dire rises to the level of constitutional magnitude to require a constitutional-error harm analysis. *See Easley v. State*, 424 S.W.3d 535, 541 (Tex. Crim. App. 2014). This case, however, is not one of them.

11

sobriety tests, and overall condition on the morning of his arrest. Accordingly, we hold that the trial court's error in not allowing Tristani to ask one question during voir dire was harmless. *See* TEX. R. APP. P. 44.2(b). We overrule Tristani's second issue.

## IV. CONCLUSION

We affirm the trial court's judgment.

GINA M. BENAVIDES,
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed the
7th day of July, 2016.