NO. 07-04-0380-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

NOVEMBER 22, 2006

_____

DONALD WAYNE DORCH, APPELLANT

v.

THE STATE OF TEXAS, APPELLEE
_____

FROM THE 8TH DISTRICT COURT OF HOPKINS COUNTY;

NO. 0317244; HON. ROBERT NEWSOM, PRESIDING
_____

Before QUINN, C.J., CAMPBELL, J., and BOYD, S.J.[1]

In two issues, appellant Donald Wayne Dorch contests his conviction of sexual assault and the resulting sentence of life confinement in the Institutional Division of the Texas Department of Criminal Justice. In presenting those issues, appellant contends: 1) the evidence is factually insufficient to sustain the conviction; and 2) he was denied effective assistance of trial counsel guaranteed to him by the Sixth Amendment to the federal constitution, article 1, section 10 of the Texas Constitution, and by article 1.051 of

_____

[1]John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment. Tex. Gov't Code Ann. §75.002(a)(1) (Vernon Supp. 2006).

the Texas Code of Criminal Procedure. For reasons we later discuss, we affirm the judgment of the trial court.

The nature of appellant's first issue requires us to briefly recount portions of the relevant evidence in sequential order. The State's first witness was the investigating officer, Jason Walton. He responded to a call concerning an alleged sexual assault on July 6, 2003. Upon his arrival at the address given, he was met by the complaining witness. He described her as being very upset and distraught. At the time, she was wearing a tee-shirt and "some type of a bottom." The officer found a roll of masking tape on a couch end table. The complainant told him the tape was used to bind her hands while she was sexually assaulted and forced to perform oral sex. The officer took the complainant to the hospital where a rape examination was performed on her. Officer Walton waited at the hospital until the examination was completed and then returned the victim to her home. At that time, he said, she had calmed down quite a bit but was "still emotional." She told him that appellant was her assailant and that the assault was without her consent. Under cross-examination, the officer said that in the room in which he found the tape, there was a couch, a television set, a coffee table, and pictures on the wall. None of the furniture had been turned over and none of the pictures on the wall had been knocked down. He also did not see any broken glass around the room or any obvious physical injuries on the complainant.

The complainant testified that she and appellant had a relationship that started when he was in prison and continued for some seven years. Indeed, he was "paroled out" to her house in July of 2002. He lived with her for a period of some months but, she averred, she learned he was seeing two other women. Her feelings were hurt, and

2

appellant moved out around March of 2003. The complainant also admitted that later, after he had moved out, she called the police and appellant's parole officer and said he had broken into her house. Although the police investigated, they never arrested appellant for the alleged crime.

On the day in question, the complainant averred she was at home alone when appellant came to her house around noon. The door bell rang and she called out for the person to come in. She said she was "stunned" to see appellant and asked him why he was there. Appellant said he had just come to talk, sat down on the couch, and began to play with her feet. The complainant told appellant to leave but he refused to do so, said it was hot, removed his shirt, and said he just wanted to talk to her. She started to get up to go to the telephone but, she averred, appellant said she wasn't going to call anyone and put the telephone on top of the television set.

The complainant related that appellant then undressed and, although she begged him not to do so, "forced hisself on [her]" vaginally and then forced her to perform oral sex on him. She said it hurt her when she was forced. He then went into the kitchen, got a beer, watched TV for about an hour, took out the trash, and then left. She said she still had her hands taped and she was trying to "bite" it off until her daughter came home an hour or so later.

Under cross-examination, the victim admitted that appellant stayed for quite some time, apologized for messing around with her, and that they watched some movies before he left. The witness denied that she had talked to appellant during the period in 2003 when he moved out of her house until he appeared at her house on the day of the incident. During the cross- examination, however, appellant introduced his cell telephone bill that

3

showed several telephone calls to the witness' home number including a 79-minute call on June 19, 2003. The complainant said that the June 19 call was not to her but was to her four-year-old daughter.

Dr. James Darryl Doughtie testified that he performed a rape examination on the complainant and he did not find any tearing or bruising in or around the complainant's vagina. Thus, the rape charge depended upon the complainant's testimony.

Appellant testified that he was "paroled out" to the complainant's house on July 12, 2002, and lived with her until May 9, 2003. He moved out after telling her that he had been seeing other women. After he moved out, he averred, the complainant attempted to get him in trouble by accusing him of breaking into her house and selling drugs. Appellant said that, after investigation, the police did not arrest him on those charges. On the day in question, he stated that about 8:30 in the morning, he walked to the complainant's house, knocked on the door, and was told to come in. He said they talked about getting back together, and that he stayed at the complainant's house until about 8:45 p.m. During that time, he testified that the complainant's daughter was present until 1:30 or 2:00 p.m. at which time complainant took the child to her sister's. When she returned, he said, she took a bath while he sat and talked to her. After the bath, he continued, they sat, he put lotion on her, and they talked and laughed. Appellant claimed he had consensual sex with her after about 40 minutes and also later during the course of the afternoon. Around 7:45 p.m., the complainant got dressed, went to Burger King, and brought back a burger and fries which they ate together. He stayed at her house another hour and then walked home.

4

Standard of Review

In the seminal case of *Clewis v. State,* 922 S.W.2d 126 (Tex. Crim. App. 1996), the court explicated the rule that in considering a factual sufficiency challenge in a criminal case, the court of appeals must view "all the evidence without the prism of 'in the light most favorable to the prosecution'" and may only set aside the jury verdict when it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Id*. at 129. In additional explication, and in the case of *Cain v. State*, 958 S.W.2d 404 (Tex. Crim. App. 1997), the court opined that the court of appeals may only exercise its jurisdiction to prevent a manifestly unjust result and is not free to set aside a jury verdict merely because the court feels that a different result is more reasonable. *Id.* at 407. Moreover, it continued, a court of appeals must support a finding of factual insufficiency by providing a detailed explanation of its finding so that it can be determined that the appellate court accorded proper deference to the jury finding and the court must explain why the jury finding is manifestly unjust, shocks the conscience, or clearly manifests bias. *Id.* In that connection, it said, the court of appeals should state in what regard the contrary evidence greatly outweighs the evidence in support of the verdict. *Id.; see also Watson v. State,* No. PD-469-05, 2006 Tex. Crim. App. LEXIS 2040 at *38-39 (Tex. Crim. App. October 18, 2006); *Johnson v. State*, 23 S.W.3d 1, 11-12 (Tex. Crim. App. 2000).

In *Santellan v. State,* 939 S.W.2d 155 (Tex. Crim. App. 1997), the court cautioned that in performing our factual sufficiency review, we must begin with the assumption that the evidence is legally sufficient and then consider all the evidence in the record related to an appellant's factual sufficiency challenge, not just the evidence which supports the

5

verdict. *Id.* at 164. It reminded us that an appellate court reviews the evidence weighed by the jury which tends to prove the elemental fact in dispute and compares it to the evidence which tends to disprove the fact. *Id.* In addition, the court opined, our factual sufficiency review must be appropriately deferential so as to avoid substituting our own judgment for that of the factfinder and it may not substantially intrude upon the jury's role as the sole judge of the weight and credibility of the witness testimony. *Id.; see also Sells v. State,* 121 S.W.3d 748, 754 (Tex. Crim. App. 2003). It is in the light of these somewhat cryptic explications that we must review the evidence in this case.

Discussion

In arguing that the evidence is insufficient, appellant points to the testimony of the investigating officer that no tables were overturned, no pictures knocked off the wall, no glass broken, and that nothing seemed to be out of place. He also refers to the testimony of the doctor that he could not find any bruises or tears in the complainant's vagina and that the fact of rape depended upon the complaining witness' testimony. In addition, he points to the complainant's testimony that she had not talked to appellant between the time that he moved out of her house until he appeared on the day in question compared with the evidence of calls from appellant's cell phone to the complainant's phone. In considering that testimony, it is worthy of note that appellant initially denied having sex with the witness and changed that testimony when he was informed of the existence of the rape kit and was requested to furnish a DNA sample to be compared with DNA evidence taken from that kit.

6

Moreover, the complaining witness clearly testified that she had been raped and maintained that testimony during a fairly extensive cross-examination, and the arresting officer testified that she appeared emotional and distraught when he arrived at the scene. In sum, it appears that this was a classic case in which the fact whether or not a rape occurred depended upon the testimony of the victim. We cannot say that the jury's determination as to the credibility of the witnesses and the resolution of conflicts in their testimony was so manifestly unjust as to require reversal. Accordingly, we must, and do hereby, overrule appellant's first point.

## Standard of Review

In his second issue, appellant contends that he did not receive the effective assistance of counsel guaranteed him by the state and federal constitutions. The standards by which such contentions are decided are, by now, axiomatic. A defendant/appellant must first show that his counsel's performance was deficient, *i.e.*, counsel's performance fell below an objective standard of reasonableness. Second, assuming that the appellant has demonstrated deficient assistance, it is necessary for him to affirmatively prove prejudice. In other words, he must show that but for his counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. This two-pronged test is the benchmark for judging whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be considered as having produced a reliable result. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *Thompson v. State*, 9 S.W.3d 808, 812-813 (Tex. Crim. App. 1999).

The assessment whether a defendant received effective assistance of counsel must be made according to the facts of each case. *Ex parte Scott,* 581 S.W.2d 181, 182 (Tex. Crim. App. 1979). Any allegation of ineffectiveness of counsel must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *McFarland v. State*, 928 S.W.2d 482, 500 (Tex. Crim. App.1996). A failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim. *Id.* An appellant bears the burden of proving by a preponderance of the evidence that counsel was ineffective and, in evaluating the effectiveness of counsel, an appellate court looks to the totality of the representation and the particular circumstances of each case. *Thompson v. State*, 9 S.W.3d at 813.

A review of counsel's representation is highly deferential, and appellate courts indulge a strong presumption that counsel's conduct falls within a wide range of reasonable presentation. *Strickland v. Washington,* 466 U.S. at 689, 104 S.Ct. at 2065*.* The burden is on an appellant to overcome that presumption by identifying the acts or omissions of counsel that are alleged to have constituted the ineffective assistance and then affirmatively proving that they fall below the professional norm for reasonableness. Again, in addition, an appellant must prove that counsel's errors, judged by the totality of the representation, denied him a fair trial. A mere showing that they had some conceivable effect on the proceedings is inadequate. *Id.* 466 U.S. at 693, 104 S.Ct. at 2067; *McFarland v. State,* 928 S.W.2d at 500.

Discussion

Without specific reference to the record, and in general terms, appellant challenges trial counsel's failure to object to the State's reference to his "past criminal history and the unadjudicated offenses or to request a limiting instruction  be given the jury for the conviction of murder and the alleged burglary of a habitation and selling drugs." As best we can tell, this has reference to testimony actually brought up by his trial attorney that the complaining witness had accused appellant of breaking into her house and had done drug deals. Parenthetically, from the context, it appears that the reference to these acts was to discredit the complaining witness and show that the victim was lying in her allegations. In the jury charge, the jury was instructed that they could not consider unadjudicated acts unless they were convinced beyond a reasonable doubt that those offenses had been committed. This record would not support a finding of ineffective assistance of counsel. The instances referred to would support a valid defensive theory.

Appellant also claims that his trial counsel was ineffective because he failed to call three witnesses that would have testified that the complaining witness had made statements  that appellant did not sexually assault her. However, nothing in the record shows who those witnesses were or to what they would have testified. Those naked allegations, in and of themselves, are clearly not sufficient for us as a reviewing court to say that trial counsel was ineffective in failing to call them. Again, as we noted above, the record before us must be sufficient for us to make a determination as to the effectiveness of counsel.

Finally, appellant asserts that trial counsel was ineffective when he "failed to have an expert investigator, Steven King, testify as to inconsistences" in the complaining

9

witness' testimony. Again, there is nothing in this record to support those naked allegations. Thus, the record before us falls far short of showing that appellant's trial counsel was ineffective. Appellant's second point is overruled.

In sum, both of appellant's points are overruled and, there being no reversible error, the judgment of the trial court is affirmed.


John T. Boyd
Senior Justice

Do not publish.