COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-06-196-CR

VERNON CANNON APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 2 OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

I. Introduction

In four points, Appellant Vernon Cannon appeals his conviction for capital murder.  We affirm.

II. Factual and Procedural History

On December 16, 2004, Fort Worth Police were called to the home of Fred Sparks by Bernice Haney.  Fred was an 82-year old widower who lived alone.  Bernice, a friend of Fred, went to check on him after he failed to keep a lunch date.  When Bernice arrived at the house she discovered Fred lying on the floor in a pool of blood.  His house keys and wallet were missing, and his back door was open.  Bernice called the police while trying to administer CPR.  Fred was declared dead on the scene by Medstar personnel.  The medical examiner determined that Fred died as a result of being shot at close range in the head and neck four times with a small caliber handgun.  Fred was also hit in the head with an unknown object.  The police found the 
base to a brass statue lying next to Fred’s body.
  

While investigating the offense,
 
the police canvassed the area, asking neighbors about people they may have seen walking throughout the neighborhood
.
 
 From this investigation, the police were given the name Tejuna Choyce.  Apparently, Choyce frequently
 walked the neighborhood, asking for money and occasionally doing odd jobs for people.  Fred had given her money in the past.  Choyce shared an apartment with Appellant located less than a mile from Fred’s house. 
 Based on statements Choyce made to the police, Appellant became a suspect in the murder.  Appellant admitted to the police
 
he had pulled a gun on Fred, demanded money, hit him over the head with a brass statue, and shot him to death in order to get the twenty dollars in Fred’s wallet. 

Appellant was charged with capital murder for killing Fred in the course of committing robbery.  
Appellant pleaded not guilty to the charge of capital murder.  The jury returned a guilty verdict, and the judge sentenced Appellant to life in the Institutional Division of the Texas Department of Criminal Justice. 

III. Legal and Factual Sufficiency

In Appellant’s first and second points, he argues that the evidence was legally and factually insufficient to support his conviction.  Appellant utilized the same fact recitation and legal arguments for both points.  As such, we will address both points together
.
 

A. Standard of Review

In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to the verdict in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  
Jackson v. Virginia
, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); 
Hampton v. State
, 165 S.W.3d 691, 693 (Tex. Crim. App. 2005).

When reviewing the factual sufficiency of the evidence to support a conviction, we view all the evidence in a neutral light, favoring neither party.  
Watson v. State
, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006); 
Drichas v. State
, 175 S.W.3d 795, 799 (Tex. Crim. App. 2005).  We then ask whether the evidence supporting the conviction, although legally sufficient, is nevertheless so weak that the fact-finder’s determination is clearly wrong and manifestly unjust or whether conflicting evidence so greatly outweighs the evidence supporting the conviction that the fact-finder’s determination is manifestly unjust.  
Watson
, 204 S.W.3d at 414-15, 417; 
Johnson v. State
, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000).  To reverse under the second ground, we must determine, with some objective basis in the record, that the great weight and preponderance of all the evidence, though legally sufficient, contradicts the verdict.  
Watson
, 204 S.W.3d at 417. 

In determining whether the evidence is factually insufficient to support a conviction that is nevertheless supported by legally sufficient evidence, it is not enough that this court “harbor a subjective level of reasonable doubt to overturn [the] conviction.”
 
 Id
.  We cannot conclude that a conviction is clearly wrong or manifestly unjust simply because we would have decided differently than the jury or because we disagree with the jury’s resolution of a conflict in the evidence.  
Id
.  We may not simply substitute our judgment for the fact-finder’s.  
Johnson
, 23 S.W.3d at 12; 
Cain v. State
, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).  Unless the record clearly reveals that a different result is appropriate, we must defer to the jury’s determination of the weight to be given contradictory testimonial evidence because resolution of the conflict “often turns on an evaluation of credibility and demeanor, and those jurors were in attendance when the testimony was delivered.”  
Johnson
, 23 S.W.3d at 8.  Thus, we must give due deference to the fact-finder’s determinations, “particularly those determinations concerning the weight and credibility of the evidence.”  
Id
. at 9.

An opinion addressing factual sufficiency must include a discussion of the most important and relevant evidence that supports the appellant’s complaint on appeal.  
Sims v. State
, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).  Moreover, an opinion reversing and remanding on factual insufficiency grounds must detail all the evidence and clearly state why the finding in question is factually insufficient and under which ground.  
Goodman v. State
, 66 S.W.3d 283, 287 (Tex. Crim. App. 2001); 
Johnson
, 23 S.W.3d at 7.
 

B. Analysis 

Appellant argues that the evidence is legally and factually insufficient to establish that he committed the offense of capital murder.  Appellant argues that he did not have the specific intent to kill Fred, as shown by his statement to the police that he “didn’t want the shooting to happen we just wanted to get his money.” 

In order for murder to qualify as capital murder, the killer’s intent to rob must be formed before or at the time of the murder.
  
Alvarado v. State
, 912 S.W.2d 199, 207 (Tex. Crim. App. 1995).  If there is evidence, however, from which the jury could rationally conclude beyond a reasonable doubt that the defendant formed the intent to obtain or maintain control of the victim’s property either before or during the commission of the murder, then the State has proven that the murder occurred in the course of robbery.  
Id. 
 The jury may infer the requisite intent from the acts, words, and conduct of the accused. 
 Id
;  
Patrick v. State
, 906 S.W.2d 481, 487 (Tex. Crim. App. 1995). 

We hold that the evidence is both legally and factually sufficient to support Appellant’s conviction of capital murder.  
The State correctly points out that the requisite intent could be inferred by any rational jury from the conduct of the accused.  By Appellant’s own admissions the jury could determine that (1) Appellant entered Fred’s home with a deadly weapon, a medium-sized revolver; (2) once Appellant was inside the home he pulled the gun out of his pocket and asked Fred for his money; 
(3) Appellant struck Fred in the head with the base of a statue; (4) Appellant shot Fred;
 (5)
 Appellant took money from Fred’s wallet; 
and
 (6) Appellant took a statue from Fred’s house. 

A jury could have inferred that Appellant took the money and statue during the course of the murder or shortly after the murder.  And from that conclusion, the jury could have further inferred that the murder was committed during the course of a robbery.  
See Roberts v. State
, 220 S.W.3d 521, 526 (Tex. Crim. App. 2007), 
cert. denied
, No. 07-5500, 2007 WL 2139364, at *1 (U.S. Oct. 1, 2007).  The mere fact that Appellant stated that he “didn’t want the shooting to happen we just wanted to get [Fred’s] money” is not enough to render the evidence insufficient to prove specific intent. 
 See Sells v. State
, 121 S.W.3d 748, 754 (Tex. Crim. App. 2003) (holding that a defendant’s own statement regarding his intent is not enough to render the evidence, without more, insufficient).  Because the record has not clearly revealed that a different result is appropriate, we must defer to the jury’s determination of the weight to be given the contradictory evidence. 
 See Johnson
, 23 S.W.3d at 8. 
 Resolution of this type of conflict often turns on the juror’s evaluation of credibility and demeanor, and the jurors were in attendance when the testimony was delivered
.
  Id.
 
 The jury had the opportunity to evaluate Appellant’s statement regarding his lack of intent to murder Fred, and they chose not to believe it.  Thus, we give due deference to the fact-finder’s determinations, particularly those determinations concerning the weight and credibility of the evidence
.  
Id.
  

Accordingly, we overrule Appellant’s first and second point.

IV. Motion to Suppress

In Appellant’s third point, he argues that the trial court erred by overruling his motion to suppress his confession that was allegedly taken in violation of 
Tex. Code Crim. Proc. Ann.
 art. 38.22 (Vernon Supp. 2006).

A. Standard of Review
 

We review a trial court’s ruling on a motion to suppress evidence under a bifurcated standard of review.  
Carmouche v. State
, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); 
Guzman v. State
, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).  In reviewing the trial court’s decision, we do not engage in our own factual review.  
Romero v. State
, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); 
Best v. State
, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.).  The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony.  
State v. Ross
, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000); 
State v. Ballard
, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999).  Therefore, we give almost total deference to the trial court’s rulings on (1) questions of historical fact, even if the trial court’s determination of those facts was not based on an evaluation of credibility and demeanor, and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor.  
Montanez v. State
, 195 S.W.3d 101, 108-09 (Tex. Crim. App. 2006); 
Johnson v. State
, 68 S.W.3d 644, 652-53 (Tex. Crim. App. 2002); 
State v. Ballman
, 157 S.W.3d 65, 68 (Tex. App.—Fort Worth 2004, pet. ref’d).  But when the trial court’s rulings do not turn on the credibility and demeanor of the witnesses, we review de novo a trial court’s rulings on mixed questions of law and fact.  
Estrada v. State
, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); 
Johnson
, 68 S.W.3d at 652-53.

Stated another way, when reviewing the trial court’s ruling on a motion to suppress, we must view the evidence in the light most favorable to the trial court’s ruling.  
State v. Kelly
, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006).  When the trial court makes explicit fact findings, we determine whether the evidence, when viewed in the light most favorable to the trial court’s ruling, supports those fact findings.  
Id
. at 818-19.  We then review the trial court’s legal ruling de novo unless its explicit fact findings that are supported by the record are also dispositive of the legal ruling.  
Id
. at 819.

When the record is silent on the reasons for the trial court’s ruling, or when there are no explicit fact findings and neither party timely requested findings and conclusions from the trial court, we imply the necessary fact findings that would support the trial court’s ruling if the evidence, viewed in the light most favorable to the trial court’s ruling, supports those findings.  
Id
.  We then review the trial court’s legal ruling de novo unless the implied fact findings supported by the record are also dispositive of the legal ruling.  
Id
.

We must uphold the trial court’s ruling if it is supported by the record and correct under any theory of law applicable to the case even if the trial court gave the wrong reason for its ruling.  
Armendariz v. State
, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003), 
cert. denied
, 541 U.S. 974 (2004); 
Ross
, 32 S.W.3d at 856; 
Romero
, 800 S.W.2d at 543.  

B. Analysis

Appellant argues that the motion to suppress should have been granted because: (1) he did not understand his warnings under
 
Tex. Code Crim. Proc. Ann.
 art. 38.22
; (2) 
he would not have given a statement if he understood that he could terminate the interview; and (3) the officer used a method to induce Appellant to give a statement that was in violation of the due process clause of the Texas and Federal Constitutions. 

After viewing the evidence in the light most favorable to the trial court’s ruling, we find that the evidence supports the trial court’s finding that the confession was a free and voluntary act.  
See Kelly
, 204 S.W.3d at 818.  Appellant first complains that he did not understand his warning under 
Tex. Code Crim. Proc. Ann.
 art. 38.22.  
Although Appellant asserts this argument on appeal, his testimony at trial is in direct contradiction of what he now claims.  For example, Appellant testified at trial that he was never given the Miranda warnings and that the day of trial was the first time he had seen the Miranda form, despite the fact that the form had his signature on it.  
And yet here, he argues that he simply did not understand the Miranda warnings.  He gives no reasons to show why he did not understand the warnings.  We know definitively that his purported lack of understanding did not stem from an inability to read or write; the record clearly shows that Appellant knew how to read and write.
(footnote: 2)  Appellant had the opportunity to read the Miranda form prior to signing it, as well as having it read to him by the detective.  Neither was his capacity to understand hindered by any drug use; the record explicitly states that the Appellant was not impaired by drugs at the time the warnings were given to him.
(footnote: 3)  We find no evidence to support Appellant’s argument that he did not understand the Miranda warnings given to him. 

Appellant also asserts that he would not have given a statement if he had understood that he could terminate the interview.  Again, Appellant cites no evidence to support this contention.  In contrast, the police detectives testified that 
Appellant agreed to give a statement after he was given his Miranda warnings.  
Appellant proceeded to sign and initial each warning contained in the Miranda form, including the warning which states that “[y]ou have the right to terminate the interview at any time.”
  
We find that Appellant did in fact know that he could terminate the interview at any time.

Lastly, Appellant argues that the police detectives used a method to induce him to give a statement that was in violation of the due process clause of the State and Federal Constitutions.  However, Appellant cites no evidence to support his complaint.  Instead, the record shows that Appellant went to the police department voluntarily where he waited in a room for approximately thirty minutes before officers came in the room, handcuffed him, and took him to the Tarrant County Jail.  
Appellant stated at trial that he was never interviewed by anybody and that he did not sign a statement in which he confessed to committing the offense.  Appellant’s testimony at trial does not align with his argument here or with the testimony of the police officers at trial.  For instance, Appellant testified that he never gave a statement to the police, however, he now argues that he did give a statement but it was induced by the police officers through an improper method.  In addition, the officers testified that Appellant agreed to give a statement, that nothing was promised in exchange for his statements, that he was not threatened or coerced, that he was offered bathroom breaks and a soft drink, and finally that he freely and voluntarily waived his rights prior to giving his confession to the police.  We find no evidence that indicates that the detectives used a method that violated Appellant’s due process right to induce Appellant to give a statement.  We agree with the trial court that Appellant’s confession was a free and voluntary act on his part.
(footnote: 4) 

After reviewing the evidence in a light most favorable to the trial court’s ruling, we find that the trial court did not err by overruling Appellant’s motion to suppress.  Therefore, we overrule Appellant’s third point. 

V.
 Rule 403 Objection

In Appellant’s fourth point, he argues that the trial court abused its discretion by allowing the State to introduce into evidence a glove that allegedly contained Appellant’s DNA. 

To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context of the request, objection, or motion.  
Tex. R. App. P.
 33.1(a)(1); 
Mosley v. State
, 983 S.W.2d 249, 265 (Tex. Crim. App. 1998) (op. on reh’g), 
cert. denied, 
526 U.S. 1070 (1999).  Further, the trial court must have ruled on the request, objection, or motion, either expressly or implicitly, or the complaining party must have objected to the trial court’s refusal to rule.  
Tex. R. App. P.
 33.1(a)(2); 
Mendez v. State
, 138 S.W.3d 334, 341 (Tex. Crim. App. 2004).

Appellant argues that the State did not lay a proper predicate for the introduction of the glove, which allegedly contained the Appellant’s DNA.  Although Appellant properly made the trial court aware of his objection to the evidence, he failed to inform the trial court exactly how the predicate was deficient.  
See Bird v. State
, 692 S.W.2d 65, 70 (Tex. Crim. App. 1985),
 cert. denied
, 475 U.S. 1031 (1986) (holding that an objection to an improper predicate that fails to inform the trial court exactly how the predicate is deficient will not preserve error). 
 
Furthermore, objections based solely on a rule are considered general objections, and they do not adequately inform the trial court of any specific complaint upon which it is to rule.  
McKee v. State
, No. 2-06-00203-CV, 2007 WL 289496, at *3 (Tex. App.
—
Fort Worth Feb. 1, 2007, no. pet.) (mem. op.) (not designated for publication). 
 
By simply objecting on Rule 403 grounds, the Appellant 
failed to preserve for appellate review any specific complaint on how the glove was unfairly prejudicial.  Accordingly, we overrule Appellant’s fourth point. 

VI. Conclusion

Having overruled Appellant’s four points, we affirm the judgment of the trial court. 

BOB MCCOY

JUSTICE

PANEL A: HOLMAN, GARDNER, and MCCOY, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED: October 18, 2007

FOOTNOTES
1:
See
 
Tex. R. App. P.
 47.4.

2:
Q: You can read and write okay?

 A: Yes, sir.

3: “I was not high when the shooting happened and I’m not high today.  By high I mean using drugs.” 

4:
“[T]he Court is going to deny the Motion to Suppress and state that Mr. Cannon agreed to come downtown to the police office; that after he was down there, he was not originally in custody; that Detective Carroll did, in fact, read him his Miranda rights, which he initialed and signed; and that after doing such, he did give a statement; that the statement was free and voluntarily made; that he was not refused any type of bathroom privileges or water, soft drinks; he was not on drugs at the time that this occurred; he did not request for an attorney; he did not ask that the interview be terminated.”