In The



Court of Appeals



Ninth District of Texas at Beaumont



 ______________________ 


 

NO. 09-07-369 CR


 ______________________



KEVIN RASHAWN WRIGHT, Appellant



V.



THE STATE OF TEXAS, Appellees






On Appeal from the 411th District Court


Polk County, Texas


Trial Cause No. 19123






MEMORANDUM OPINION


 A jury found appellant Kevin Rashawn Wright guilty of murder and assessed a term
of fifty years of confinement as punishment. See Tex. Pen. Code Ann. § 19.02(b)(1)
(Vernon 2003). In two issues, appellant challenges the legal and factual sufficiency of the
evidence supporting his murder conviction. We affirm.

 The jury observed two taped interviews of appellant by law enforcement. Appellant
stated that on Saturday, May, 13, 2006, he was living in Houston and returned a call from his
sister, Angela. Angela told him that she and her boyfriend, "Junior Boy" (Clayton Junior
Jones), had an argument and he had physically assaulted her. Appellant was planning to
come to Livingston that day. On the way back from the store in Houston that day, appellant
saw "D Black" (Jackie Welch), whom appellant had known for about two months, but he did
not know his real name. He told Welch about the fight between his sister and her boyfriend
and that he was going "to the country" to see his mother in Livingston for Mother's Day. 
Welch asked to go with appellant too because he wanted to go to the country to shoot his
pistol. 

 Angela picked up appellant and Welch at appellant's apartment that afternoon. 
Angela showed appellant a bite mark and bruises on her. Welch had his pistol in a dark-colored backpack. They went to appellant's mother's house. Appellant and Welch then
drove to the "West End." Welch asked appellant what he was doing, and appellant said he
was looking for Angela's boyfriend. Appellant wanted to "have words" with Jones, or
"knock a tooth out or two ." 

 While driving, appellant saw Jones huddled with several other people and so appellant
decided not to stop. Appellant and Welch drove to appellant's grandfather's house and both
shot Welch's gun into the woods. Welch ran out of bullets and they attempted to purchase
bullets at Wal-Mart but could not because they did not have identification. Appellant called
his cousin, Reginald, who went with them to purchase bullets for them at Wal-Mart. Welch
shot the gun in the backyard of appellant's mother's house. Later that afternoon, at
appellant's mother's house, appellant, Welch, Angela, Reginald, and a couple of children
were outside. Jones drove up, walked up to the porch, and began arguing with Angela. As
Jones walked off the porch, he threatened to come back and "set it off." Appellant started
to follow Jones. Welch and Jones exchanged words and Welch shot Jones several times. 
Appellant stated he had no idea Welch would shoot Jones.

 Appellant saw Jones take his last breath. He dragged Jones over close to the ditch
across the street. Appellant and Welch then drove back to Houston. Welch was in a daze
and was saying "I [did] it for you, man." They returned to appellant's apartment in Houston
and Welch got out with his backpack and gun. 

 Reginald, appellant's cousin, testified. His testimony corroborated appellant's video
statements. (1) 

 Titania Davis testified that on May 12, 2006, she witnessed a fight between Clayton
Junior Boy Jones and Desmond Austin at a night club. Later that night, Davis saw Jones slap
Angela and Angela hit Jones in the head with the keys. Angie said she was going to call her
brother because Jones slapped her.

 Around 4:45 a.m. the next morning, Polk County patrolman William Jerry was
dispatched to Williams Village I in response to a report of a "drunk guy in the ditch." At
first, Jerry could not locate anyone in the ditch so he obtained the address of the complainant
from dispatch. He asked Angela where the intoxicated person was, and she pointed towards
the person. He found Jones, deceased, in the ditch. During the crime scene investigation,
detectives obtained nine shell casings from a nine millimeter gun off to the side of the porch.

 Dr. Kathryn Haden-Pinneri, assistant medical examiner with the Harris County
Medical Examiners Office performed Jones' autopsy. At some point during the transport of
Jones' body from the scene to the examiner's office, Jones' arm was broken. Pinneri noted
small abrasions on his body and swelling and bruising around his right eye. She determined
the cause of Jones' death to be multiple gunshot wounds. She identified seven gunshot
wounds.

 Appellant challenges the legal and factually sufficiency of the evidence supporting
the jury's verdict and contends the State failed to prove he participated as a party to the
murder. (2) A legal sufficiency review requires us to view the evidence in the light most
favorable to the verdict and determine whether any rational trier of fact could have found the
essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S.
307, 318-19, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); Ross v. State, 133 S.W.3d 618, 620 (Tex.
Crim. App. 2004). The trier of fact is the judge of the weight and credibility of the evidence. 
Margraves v. State, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000). Thus when performing a
legal sufficiency review, an appellate court does not re-evaluate the weight and credibility
of the evidence to substitute its judgment for that of the fact-finder. Dewberry v. State, 4
S.W.3d 735, 740 (Tex. Crim. App. 1999). We must resolve inconsistencies in the evidence
in favor of the verdict. Matson v. State, 819 S.W.2d 839, 843 (Tex. Crim. App. 1991).

 When reviewing the factual sufficiency of the evidence, we view all the evidence in
a neutral light. Watson v. State, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006). We will set
aside the verdict only if: (1) the evidence supporting the conviction, although legally
sufficient, is nevertheless so weak that the fact-finder's determination is clearly wrong and
manifestly unjust; or (2) the verdict is against the great weight and preponderance of the
evidence. Id. at 414-15, 417; Sells v. State, 121 S.W.3d 748, 754 (Tex. Crim. App. 2003). 
 The trial court instructed the jury on the law of parties. Appellant's conviction may
be upheld upon proof that the offense was committed "by his own conduct, by the conduct
of another for which he is criminally responsible, or by both." Tex. Pen. Code Ann. §
7.01(a) (Vernon 2003). A person is criminally responsible for an offense committed by the
conduct of another if, "acting with intent to promote or assist the commission of the offense,
he solicits, encourages, directs, aids, or attempts to aid the other person to commit the
offense[.]" Tex. Pen. Code Ann. § 7.02(a)(2) (Vernon 2003).

 Evidence is sufficient to convict a defendant under the law of parties when he or she
is physically present at the commission of the offense and encourages the commission of the
offense either by words or by other agreement. Salinas v. State, 163 S.W.3d 734, 739 (Tex.
Crim. App. 2005). While the presence of an accused at the scene of an offense is not alone
sufficient to support a conviction, it is a circumstance tending to prove guilt, which,
combined with other facts, may suffice to show that the accused was a participant. Beardsley
v. State, 738 S.W.2d 681, 685 (Tex. Crim. App. 1987). Participation in an enterprise may
be inferred from circumstances and need not be shown by direct evidence. Id. at 684. 

 Appellant argues there is no evidence that he solicited, encouraged, directed, aided,
or attempted to aid Welch in murdering Jones, or that appellant acted with intent to promote
or assist Welch in the murder. Specifically, appellant maintains there was no evidence (1)
that bullets fired by Welch actually caused Jones' death; (2) of the caliber of the spent
projectiles recovered during Jones' autopsy; (3) that the spent projectiles recovered during
Jones' autopsy were fired from the same firearm; (4) as to where Jones went after the
shooting; (5) as to how Jones' body got from Angela's mother's yard to the ditch; and (6)
as to how Jones received his post-mortem injuries. 

 Reginald testified he heard at least six shots from the nine millimeter. He witnessed
Jones fall to the ground. Reginald identified Welch as the shooter and Welch admitted
shooting Jones. Pinneri testified that at least one of the gunshots would have been a "fairly
instantly fatal injury." Appellant testified he saw Jones take his last breath. Appellant
admitted moving the body by himself. 

 Pinneri identified insect activity to the body, decomposition of the body, and a broken
left arm as Jones' post-mortem injuries. She testified that the broken arm occurred during
the transport of the body from the crime scene to the examiner's office and that the injury
most likely resulted from the difficulty in getting his body, which was muscular and in a state
of rigor mortis, into the body bag. She could not determine whether the swelling or bruising
around Jones' right eye occurred around the time of the gunshot wounds. When asked to
assume that Jones had been in a fight the night before, Pinneri stated that the injury was
consistent with an injury that could have been received at that time. 

 The morning of the shooting, Angela told appellant that Jones had assaulted her. She
picked appellant and Welch up in Houston and brought them back to Livingston. The jury
heard appellant admit he went looking for Jones in the "West End," and that he wanted to
hurt Jones for assaulting his sister. Appellant stated he knew Welch was going to bring a
gun. They both test-fired the gun the day of the shooting. When the argument on the porch
began, Welch moved to the backseat of the vehicle. The jury could have reasonably believed
that appellant knew Welch was going to shoot Jones. On this record, the jury could have
reasonably believed that appellant, either by words or agreement, encouraged Welch in
murdering Jones, and was a participant in the crime. The evidence is legally and factually
sufficient to support the jury's verdict. Issues one and two are overruled. The judgment is
affirmed. 

 AFFIRMED. 


 ____________________________

 DAVID GAULTNEY

 Justice


Submitted on May 27, 2008

Opinion Delivered August 13, 2008

Do Not Publish


Before McKeithen, C.J., Gaultney and Kreger, JJ.
1. The jury also observed taped interviews of Jackie Welch but the court instructed the
jury that Welch's confessions were admitted solely in Welch's case and could not be
considered as evidence against Wright, or in any way connect Wright to the offense.
2. Welch was also convicted of murder and his appeal is pending with this Court.