In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-08-00090-CR


______________________________




ROSEDO RANGEL ORTIZ, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 124th Judicial District Court


 Gregg County, Texas


Trial Court No. 32557-B




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Chief Justice Morriss



MEMORANDUM OPINION



 After a security guard interrupted his drug deal in the men's restroom at the historic Reo Palm
Isle nightclub (the Reo) (1) near Longview, Rosedo Rangel Ortiz was arrested and charged with
possession of 19.2 grams of cocaine. See Tex. Health & Safety Code Ann. § 481.115(a), (d)
(Vernon 2003). Ortiz subsequently waived his right to a jury trial and allowed the case to be
submitted to the trial court February 5, 2008. The trial court found Ortiz guilty and sentenced him
to twenty years' imprisonment. See id.; Tex. Penal Code Ann. § 12.33 (Vernon 2003). Ortiz now
appeals, contending the evidence is legally and factually insufficient to support his conviction. We
hold (1) sufficient evidence supports the trial court's judgment and (2) the judgment should be
reformed to correct a clerical error. Therefore, we reform the judgment in a minor respect as to the
plea and affirm the trial court's judgment as reformed.

(1) Sufficient Evidence Supports the Trial Court's Judgment

 In reviewing a challenge to the legal sufficiency of the evidence, we should ask "whether,
after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact
could have found the essential elements of the crime beyond a reasonable doubt." Jackson v.
Virginia, 443 U.S. 307, 319 (1979). This standard requires us to accord deference to the fact-finder's
duty to resolve conflicts in testimony and other evidence. Clayton v. State, 235 S.W.3d 772, 778
(Tex. Crim. App. 2007). In determining legal sufficiency, we must review all of the evidence, both
that which was properly admitted and that which was improperly admitted, to determine whether the
combined and cumulative force of all the evidence (direct, circumstantial, or both) supports the
verdict when such evidence is viewed in the light most favorable to that verdict. Id.; see also
Williams v. State, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). Evidence is factually insufficient
if: "1) it is so weak as to be clearly wrong and manifestly unjust or 2) the adverse finding is against
the great weight and preponderance of the available evidence." Berry v. State, 233 S.W.3d 847, 854
(Tex. Crim. App. 2007) (quoting Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000)). "Such
a factual sufficiency review requires the reviewing court to consider all of the evidence." Id. (citing
Marshall v. State, 210 S.W.3d 618, 625 (Tex. Crim. App. 2006)). "A clearly wrong and unjust
verdict occurs where the jury's finding is manifestly unjust, shocks the conscience, or clearly
demonstrates bias." Id. (citing Sells v. State, 121 S.W.3d 748, 754 (Tex. Crim. App. 2003);
Santellan v. State, 939 S.W.2d 155, 164-65 (Tex. Crim. App. 1997)).

 When assessing the legal sufficiency of evidence on appeal, we should measure elements of
the offense as defined in a hypothetically correct jury charge for the case. Malik v. State, 953 S.W.2d
234, 240 (Tex. Crim. App. 1997); State v. Blankenship, 170 S.W.3d 676, 682 (Tex. App.--Austin
2005, pet. ref'd) (applicable in nonjury cases). The hypothetically correct jury charge "sets out the
law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or
unnecessarily restrict the State's theories of liability, and adequately describes the particular offense
for which the defendant was tried." Malik, 953 S.W.2d at 240. We must also employ the
hypothetically correct jury charge construct when assessing the factual sufficiency of the evidence. 
Vega v. State, No. PD-1615-06, 2008 WL 4414534, at *2 (Tex. Crim. App. Oct. 1, 2008).

 The State abandoned the first charging paragraph of its indictment and proceeded to trial on
the indictment's second paragraph. This "Paragraph B" alleged Ortiz "did then and there
intentionally or knowingly possess a controlled substance listed in penalty group 1 of the Texas
Controlled Substances Act, namely cocaine, in an amount of four grams or more but less than two-hundred grams . . . ." Accordingly, the hypothetically correct jury charge in this case would require
the State to bring forth proof of the following elements: that Ortiz (a) knowingly or intentionally,
(b) possessed, (c) cocaine, (d) in an amount weighing more than four grams but less than 200 grams,
(e) on or about June 20, 2004.

 Ortiz submitted no evidence or testimony; instead, the trial court's judgment rests entirely on
the State's evidence, which consisted of live testimony from four witnesses and four trial exhibits.

 Nick Henson, a former Gregg County Sheriff's Deputy, testified he was dispatched to the Reo
June 20, 2004, regarding a fight that was going on at the club. Henson arrived at the Reo to find two
suspects being restrained by a Reo security guard, Kenneth Jacobs. (2) Henson identified Ortiz as one
of the persons who had been detained by Jacobs June 20, 2004. Henson took control of some
suspected narcotics given him by Jacobs. Henson identified the suspected narcotics as State's exhibit
1 and said the aggregate weight was 19.2 grams. The deputy also testified that Jacobs was unable
to say which of the two suspects had been in possession of the drugs before Henson's arrival. 
Apparently, another one of the Reo's security guards (not Jacobs himself) had been the one to
actually walk into the restroom and discover the suspected drug transaction, which explained why
Jacobs was unable to convey any personal knowledge to Henson regarding actual possession of the
drugs by the suspects. Henson testified he visited no security personnel, except Jacobs and a lady
who helped serve as a translator during Henson's attempt to interview Ortiz. Henson also testified
that no field testing was done that night on the drugs. 

 Damon Fletcher Welch, a security guard for the Reo on June 20, 2004, also testified. That
night, Welch walked into the restroom at the Reo and saw "two gentlemen standing by the trash can
in the restroom." One of these men 

 had a plastic bag in his hand with a white substance on it. The other had a wad of
money in his hand. They looked up, saw [Welch], the one with the bag threw it in
the trash can, said something to the other gentleman in Spanish, and he put the money
up. 


Welch identified Ortiz in court as being the person he saw holding the plastic bag with a white
substance on it. Welch called for backup and ordered both men to stand against the restroom wall. 
Once help arrived, Welch retrieved from the trash can the plastic bag with the white substance on
it. Later, pictures were taken of both suspects, Welch gave the drugs to Jacobs, and Welch went
back inside the club to attend to other matters. Lieutenant William Drennan, a veteran of the Gregg
County Sheriff's Office, later asked Welch to come to the sheriff's office to complete a witness
statement, which was done June 28, 2004. Welch also testified that he spoke with a sheriff's deputy
on the evening in question and that the deputy witnessed Welch hand the plastic bag containing
suspected drugs to Jacobs. However, the written statement Welch gave to Drennan reportedly stated
that Welch gave the narcotics directly to Henson and discussed the incident with him. (This written
police statement was never submitted into evidence; the only record we have of its content is Welch's
testimonial account of such and Drennan's subsequent testimony.) Welch also reportedly witnessed
a Department of Public Safety (DPS) trooper field test the suspected narcotics.

 Drennan testified that he talked with Welch June 28 regarding the events at the Reo eight
days earlier. Drennan interviewed Welch and helped the latter complete a witness affidavit in this
case.

 Clabion Cloud, a chemist with the Texas DPS's crime laboratory in Tyler, testified that he
examined the narcotics at issue in this case. A laboratory analysis showed the drugs weighed 19.2
grams and contained cocaine.

 Using the elements found in the applicable hypothetically correct jury charge (set out above),
we conclude the evidence is both legally and factually sufficient to support the trial court's judgment. 
Viewing the evidence in the light most favorable to the trial court's verdict, we see the trial court had
before  it  evidence  that  Ortiz  (a)  intentionally  or  knowingly,  (b)  possessed,  (c)  cocaine,  that
(d) weighed more than four grams but less than 200 grams, (e) on or about June 20, 2004. 
Additionally, the record evidence supporting the trial court's judgment--though contradicted
somewhat by minor inconsistencies in the testimony--is not greatly outweighed by any contrary
evidence. Nor do we believe these inconsistencies render the trial court's verdict "shocking" or
"manifestly unjust," especially when considering that four years had passed since the time of the
incident and the time of trial. One can understand that the witnesses might remember certain
specifics differently after the passage of nearly four years between the incident and the trial, but the
witnesses were consistent with regard to evidence related to the elements of the hypothetically
correct jury charge. Welch testified five different times that Ortiz possessed the drugs, on which the
prosecution was predicated. The evidence is legally and factually sufficient to support the trial
court's judgment.

(2) The Judgment Should be Reformed to Correct a Clerical Error

 We do, however, note that the trial court's judgment recites Ortiz pled "guilty" to the
underlying charge of possession of a controlled substance. The appellate record shows Ortiz pled
"not guilty." 

 This Court has the authority to reform a trial court's judgment to make the record speak the
truth when the matter has been called to our attention by any source, even sua sponte. French v.
State, 830 S.W.2d 607 (Tex. Crim. App. 1992); Asberry v. State, 813 S.W.2d 526 (Tex.
App.--Dallas 1991, pet. ref'd); see TEX. R. APP. P. 43.2. Therefore, we hereby reform the trial
court's judgment to indicate that Ortiz pled "not guilty" to the offense.


 As reformed, we affirm the trial court's judgment.





 Josh R. Morriss, III

 Chief Justice



Date Submitted: December 23, 2008

Date Decided: December 30, 2008


Do Not Publish



1. The Reo, located in Gregg County between Kilgore and Longview, has a colorful and storied
history. It has been identified by Country Music Television as the oldest, continuously operated
ballroom in Texas. See Biography of Miranda Lambert, http://www.cmt.com/artists/
az/lambert_miranda/bio.jhtml. Many of the great performers in American popular music have
played at the Reo, including Elvis and Willie Nelson. Id.
2. Jacobs was an employee of Jacobs Security Services of Tyler. 


Shugart.
Factual Sufficiency
            Fields presented one issue on appeal complaining that the evidence was legally and factually
insufficient. However, in the brief, he cites us only to the Jackson


 case and its progeny, which is
the standard for a legal sufficiency review. Further, Fields does not analyze the evidence under a
factual sufficiency standard. We find that his point of error as to factual sufficiency is inadequately
briefed and therefore waived. See Tex. R. App. P. 38.1(h).
            Even if we considered the issue, we would find that the evidence is factually sufficient to
support the jury's verdict.
            In Zuniga v. State, 144 S.W.3d 477 (Tex. Crim. App. 2004), the Texas Court of Criminal
Appeals held that, when an appellant challenges the factual sufficiency of the evidence, the
reviewing court must determine whether, considering all of the evidence in a neutral light, the jury
was rationally justified in reaching its verdict beyond a reasonable doubt. Id. at 484. There are two
ways in which the verdict may be factually insufficient. First, the evidence supporting the verdict,
if considered alone, may be too weak to support the jury's finding beyond a reasonable doubt.  Id. 
Second, if—when weighing the evidence supporting and contravening the conviction—the reviewing
court concludes contrary evidence is strong enough, but the State could not have met its burden of
proof, then the evidence must be held to be insufficient. Id. at 484–85. "Stated another way,
evidence supporting guilt can 'outweigh' the contrary proof and still be factually insufficient under
a beyond-a-reasonable-doubt standard."  Id. at 485. If the evidence is factually insufficient, the
reviewing court must reverse the judgment and remand for a new trial. Clewis v. State, 922 S.W.2d
126, 135 (Tex. Crim. App. 1996); Wilson v. State, 139 S.W.3d 104 (Tex. App.—Texarkana 2004,
pet. ref'd).
            In this case, the evidence contravening the conviction as argued in Fields' brief is that the
facts do not support a finding of a constructive transfer since he did not have direct or indirect
control of the cocaine. Further, Fields argues that, to be convicted of actual delivery, Fields must
have transferred actual possession and control to another, and since he did not actually hand the
cocaine to Shugart and did not receive the money for the purchase, Fields cannot be guilty of actual
delivery. This argument completely ignores the law of parties. We have found that there was ample
evidence to support Fields' conviction as a party to an actual transfer, and the State did not need to
rely on the constructive delivery theory. The evidence is factually sufficient.
            We affirm the judgment of the trial court. 



 
                                                                        Jack Carter
                                                                        Justice
 
Date Submitted:          November 29, 2004
Date Decided:             January 6, 2005

Do Not Publish