**Opinion filed February 18, 2010**



# In The

# Eleventh Court of Appeals

_____

## No. 11-08-00054-CR

_____

## NAOMI ALVA, Appellant

## V.

## STATE OF TEXAS, Appellee

**On Appeal from the 70th District Court**

**Ector County, Texas**

**Trial Court Cause No. A-33,361**

## M E M O R A N D U M   O P I N I O N

In two issues of asserted error, appellant Naomi Alva seeks reversal of her conviction for murder and the ensuing punishment of life confinement in the Institutional Division of the Texas Department of Criminal Justice.  In her first issue, she contends it was error for the State's attorney or the trial court to inject injurious and prejudicial matters before the jury panel during the voir dire examination.  In her second issue, she asserts the trial court reversibly erred in overruling her motion for directed acquittal because the evidence was legally and factually insufficient to warrant a charge to the jury on the offense of murder.  Disagreeing that reversal is required, we affirm the judgment of the trial court.

The basis of appellant's first issue is a comment by the State made during the State's jury voir dire examination. In the portion of that examination giving rise to this challenge, the State commented: "It is not evidence, and it can't be used as a consideration whenever the Defendant doesn't testify. You can't consider that. . . . However, if a Defendant does give up that right, and testifies, is anybody going to go, oh, well, they gave up that special right, they must be more believable than anybody else?"

Having received no reply to that question, the State continued: "You think, well, they gave up that right, so, wow, they're going to come in here and just automatically think that they're telling the truth because of that? Would you think that?" It was at that point that appellant's counsel objected on the basis that, by its statement, the State reversibly erred in making a strong implication that appellant should testify.

In the seminal case of *Sells v. State*, 121 S.W.3d 748 (Tex. Crim. App. 2003), the high court instructs that, during the voir dire examination, it would leave to the trial court's discretion the propriety of a voir dire question and it would not disturb that trial court's resolution of a particular question absent an abuse of discretion. *Id.* at 755. It went on to define a proper voir dire question as one that "seeks to discover a juror's views on some issue applicable to the case." *Id*.

In contending that the question and dialogue were improper, appellant posits that the State made a strong implication that appellant should testify and by doing so ventured into reversible error. In maintaining that position, appellant primarily relies upon the court's decision in *Godfrey v. State*, 859 S.W.2d 583 (Tex. App.—Houston [14th Dist.] 1993, no pet.). In that case, the court considered statements made by the prosecutor during the State's jury voir dire examination such as, if that defendant "gets up here and testifies, he will say anything to save his own hide, he will get up there and lie" and, "if he doesn't testify, he must be hiding something." *Id.* at 584. The *Godfrey* court held that those statements required reversal because they were "a misstatement of the law, particularly, a misstatement as to why a defendant may or may not choose to testify." *Id.* at 585. The *Godfrey* court also commented, and put emphasis, on the fact that the prosecutor, after an objection was overruled, "persevered with the same line of argument." *Id.* at 585. En route to its reversal, the court noted that the statements made by the prosecutor were "extremely improper" and that the "State should not be allowed to continue making such improper statements with impunity." *Id.* at 586.

Although admitting that the statement in question here "was not as grievous," appellant contends that the trial court here reversibly erred because the question led to "a misstatement of the law through an implication that a Defendant who testifies receives the benefit of a doubt from the jury."

In considering appellant's argument, we note the general statement of the law that appellate courts give wide latitude to trial court decisions made during the jury selection process and that the decision of a trial court as to the propriety of a particular question will not be disturbed absent an abuse of discretion. *Barajas v. State*, 93 S.W.3d 36, 38 (Tex. Crim. App. 2002). Responding to appellant's argument that reversal is required, the State argues that the question was proper because it sought to discover whether the prospective jurors had any preexisting biases that, if appellant chose to take the stand, would make her more believable. In comments made prior to asking the question, the record reveals that the prosecutor had commented on the defendant's right not to testify and that the jurors could not consider the failure to take the stand in their deliberation.

The Court of Criminal Appeals has instructed that a commitment question is one that commits a prospective juror to resolve or refrain from resolving an issue a certain way after learning a particular fact. *Standefer v. State*, 59 S.W.3d 177, 179 (Tex. Crim. App. 2001). If the State's question had been answered affirmatively, it would have given rise to a valid challenge for cause. Under this record, we cannot conclude that the trial court abused its discretion.

Additionally, even if we assume, arguendo, that the question was improper, we again find the comments of the *Godfrey* court instructive. En route to its reversal of the trial court's ruling, the court commented that statements of counsel would "not constitute reversible error unless, in light of the record as a whole, the statements are extreme or manifestly improper, violative of a mandatory statute, or inject new facts harmful to the accused into the proceedings." *Godfrey*, 859 S.W.2d at 585.

Here, in asking the question, the prosecutor did not violate any mandatory statute, nor did he inject new facts harmful to the accused. Moreover, he did not, as the prosecutor in the *Godfrey* case had done, emphasize or repeat the alleged error. Indeed, after appellant's trial objection, the prosecutor abandoned that line of questioning. In sum, under this record, we cannot find that the trial court abused its discretion in failing to grant a mistrial. Because it does not reveal reversible error, appellant's first issue is overruled.

Reiterated, in her second issue, appellant contends that the trial court reversibly erred in overruling her motion for directed acquittal because the evidence was both legally and factually insufficient to warrant a charge to the jury on the offense of murder. That argument requires us to briefly recount relevant evidence.

The testimony revealed that on June 18, 2006, there was a party and that, during that party, appellant and one Sarah Kiskaden got into an argument. Appellant then left the party in a van accompanied by three others, namely Jesse McGinnis, Jonathan Paredes, and Ervin Terry. Paredes averred that, while the quartet was in the van, McGinnis called an individual identified as Johnnie Oranday. In the course of that conversation, McGinnis asked Oranday to get two guns for him: a "9 and a bitch." It was later identified that that was a reference to a 9 mm pistol and a shotgun. Further, in the course of the conversation, McGinnis said he needed the guns because he was going to "hit Mark and Adrian." Paredes also averred that, during the course of that conversation, appellant was in the van next to McGinnis and was "egging it on." He also said that appellant told another friend of hers who was still at the party, "[D]on't worry. We are going to take care of them."

Sarah Kiskaden said that she was still at the party when appellant returned to the party in the driver's seat of the van with McGinnis in the passenger seat. As she approached the van, she saw McGinnis get out of the van and shoot "the gun" in the air. She then ran off and later learned that Adrian Garza, her boyfriend, had been shot.

Sergio Pol testified that he was at the party that night. He saw a van approaching with its "sliding door" open. He saw McGinnis get out of the van, fire once into the air and once toward another man, and "unload[] the rest of the clip" on Garza. He then heard appellant tell McGinnis to "hurry up and get in." McGinnis was then pulled into the van, and with appellant driving, it pulled away. Pol averred that the engine of the van was kept running during the entire time of the shooting incident.

Ervin Terry testified that he was in the van when it left the party, that it was driven by appellant with McGinnis in the front seat, and that he heard McGinnis call someone for "a bitch and a 9" because he was going to shoot someone in the stomach.

When, as here, the propriety of a denial of a motion for directed verdict is challenged, the reviewing court will consider it the same as an attack upon the sufficiency of the evidence to sustain a conviction. *McDuff v. State*, 939 S.W.2d 607, 613 (Tex. Crim. App. 1997).

4

In determining the legal sufficiency of evidence to sustain a conviction, the reviewing court views all the evidence in a light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Garrett v. State*, 851 S.W.2d 853, 857 (Tex. Crim. App. 1993) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). In conducting a factual sufficiency review, the reviewing court views all the evidence in a neutral light and determines whether the evidence supporting the verdict is so weak that the verdict is clearly wrong and manifestly unjust or whether the verdict is against the great weight and preponderance of the conflicting evidence. *Watson v. State*, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006). In conducting the factual sufficiency review, we are cautioned that we must be appropriately deferential to the jury's findings. *Id.* at 407; *Johnson v. State*, 23 S.W.3d 1 (Tex. Crim. App. 2000).

The evidence is legally sufficient. By the testimony of two witnesses, appellant was seated next to McGinnis when he made the telephone call asking for two guns and said that he was going to use the guns to make a "hit." Paredes averred that appellant was "egging it on." There was testimony that appellant had driven the van to the place where the shooting took place and had the door open with the engine running while McGinnis shot Garza. That evidence is sufficient to support a jury belief that she had knowledge of the existence of the guns and the intent to use them. The fact that she drove the van to the scene of the incident with that knowledge and waited with the engine running during the shooting is sufficient to justify a jury belief that she had knowledge of the existence of the guns, the intent with which they were to be used, and, by her conduct, she encouraged and aided the commission of the crime.

That evidence is also factually sufficient to justify the verdict of the jury. Again, the evidence was sufficient to justify a jury belief that there was a plan to bring guns to the scene of the shooting, that appellant knew of that plan, and that it was intended to use the guns to make a "hit." It was also sufficient to justify a jury belief that, by appellant's conduct, she encouraged and participated in the shooting and death of Garza.

Suffice it to say that, after reviewing the evidence, we find it both legally and factually sufficient to justify the conviction. Accordingly, appellant's second issue must be, and is hereby, overruled.

5

There being no reversible error, the judgment of the trial court is affirmed.

PER CURIAM

February 18, 2010

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Boyd, S.J.[1]

---

[1]John T. Boyd, Retired Chief Justice, Court of Appeals, 7th District of Texas at Amarillo, sitting by assignment.