

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

**NO. 2-09-286-CR**

THOMAS WARREN DOWDEN            APPELLANT

V.

THE STATE OF TEXAS            STATE

------------

FROM THE 372ND DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

Appellant Thomas Warren Dowden appeals from a judgment of conviction for aggravated assault with a deadly weapon, enhanced by a prior felony conviction, and a judgment of conviction for possession of a firearm by a felon. Appellant waived his right to a trial by jury and proceeded to trial before the court. He also stipulated that he had previously been convicted of the felony offense of aggravated assault on a police officer. In his first two points, he claims that the evidence was legally and factually insufficient to support the convictions. In his third point, he maintains that

---

[1] *See* Tex. R. App. P. 47.4.

he was denied his right to effective assistance of counsel at trial. We resolve these points in favor of the State and affirm the trial court's judgments.

## The Facts

On the night of December 30, 2007, the Fort Worth Police Department received a "loud music" complaint and dispatched police officers Anthony Staggs and Ryan Timmons to the 1800 block of Highland Avenue. When they arrived, they found that the loud music was coming from a Ford F-250 pickup parked in the street near a house. Staggs got out of the police car and went over to the truck. The man inside, whom Staggs identified as Appellant, appeared to be asleep in the front passenger seat. Staggs then shined his flashlight on Appellant; announced, "Police"; and tapped on the window. While rolling over, Appellant picked up his loaded gun and pointed it at Staggs's head. Staggs feared he was about to be shot and perhaps killed.

Staggs repeated that he was a police officer and ordered Appellant to drop the gun. After Appellant did not drop the gun, Staggs moved back from the truck out of the line of sight. As he did, Appellant kept his gun aimed at him. Timmons ran toward the truck. Staggs then drew his gun, and Appellant raised his hands, still holding the gun. Appellant finally did drop the gun but refused to obey the officers' other commands.

Timmons broke out the passenger side window while Staggs tried to remove Appellant from the truck. As he did so, Appellant tried to hit him. When the officers

2

used pepper spray, Appellant climbed out the driver's side of the truck and ran to his house. Timmons caught Appellant at the front door and struggled with him. After Staggs kicked Appellant using "knee-strikes" and used a Taser on Appellant, the officers subdued him.

After taking Appellant into custody, the officers found the gun—a Ruger 9 millimeter—with a fully loaded magazine, a second loaded magazine, and a half empty bottle of Crown Royal whiskey, along with other items, inside the truck.

Following his arrest, Appellant was medically examined. His coccyx (tailbone) had been recently fractured. He had a hemorrhage to his right eye, pain in one of his shoulders, acute trauma in his lower back, and scratches and contusions to his forehead, among other injuries.

**Appellant's Defensive Claims**

Appellant testified that on the night of December 30, he and his wife had gone out to dinner and to play cards. He had a few drinks that night. Upon returning to his house, Appellant decided to stay outside in his truck and listen to music. In grand jury testimony, a transcription of which was admitted as State's exhibit 4, Appellant had admitted to having his gun in his truck and to have driven in it for two days.

Appellant also testified that after falling asleep in his truck, he was awakened by a bright light and a gun pointed at him. He testified that he was scared and pointed his gun. When the officers backed up, he saw the Fort Worth Police car,

3

threw his gun down, and raised his hands. He claimed that he did not hear them identify themselves as police but believed he was being robbed. He also denied struggling against the officers. On cross examination, he acknowledged that he had not dropped the gun, but that he had put it between the seat and center console, and that he had put Staggs in danger of serious bodily injury.

At the conclusion of the trial, the trial court acknowledged that both sides presented conflicting versions of the relevant events, requiring an evaluation of the credibility of the witnesses. The trial court fully discussed the offenses and events of the night. The trial court believed the State's witnesses and found its evidence credible; it disbelieved Appellant and found him not credible.

## Sufficiency of the Evidence

In reviewing the legal sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the prosecution in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton*, 235 S.W.3d at 778. The trier of fact is the sole judge of the weight and

4

credibility of the evidence.  *See* Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1979); *Brown v. State*, 270 S.W.3d 564, 568 (Tex. Crim. App. 2008), *cert. denied*, 129 S. Ct. 2075 (2009).  Thus, when performing a legal sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder.  *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), *cert. denied*, 529 U.S. 1131 (2000).  Instead, we "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Hooper v. State*, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007).  We must presume that the factfinder resolved any conflicting inferences in favor of the prosecution and defer to that resolution.  *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Clayton*, 235 S.W.3d at 778.

When reviewing the factual sufficiency of the evidence to support a conviction, we view all the evidence in a neutral light, favoring neither party.  *Steadman v. State*, 280 S.W.3d 242, 246 (Tex. Crim. App. 2009); *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006).  We then ask whether the evidence supporting the conviction, although legally sufficient, is nevertheless so weak that the factfinder's determination is clearly wrong and manifestly unjust or whether conflicting evidence so greatly outweighs the evidence supporting the conviction that the factfinder's determination is manifestly unjust.  *Steadman*, 280 S.W.3d at 246; *Watson*, 204 S.W.3d at 414–15, 417.  To reverse under the second ground, we must determine,

5

with some objective basis in the record, that the great weight and preponderance of all the evidence, although legally sufficient, contradicts the judgment when the trial court is the trier of fact. *Watson*, 204 S.W.3d at 417.

Unless we conclude that it is necessary to correct manifest injustice, we must give due deference to the factfinder's determinations, "particularly those determinations concerning the weight and credibility of the evidence." *Johnson v. State*, 23 S.W.3d 1, 9 (Tex. Crim. App. 2000); *see Steadman*, 280 S.W.3d at 246. Evidence is always factually sufficient when it preponderates in favor of the conviction. *Steadman*, 280 S.W.3d at 247; *see Watson*, 204 S.W.3d at 417.

The elements of the offense of aggravated assault with a deadly weapon are that a person intentionally or knowingly threatens another with imminent bodily injury, while using or exhibiting a deadly weapon. Tex. Penal Code Ann. §§ 22.01(a)(2), 22.02(a)(2) (Vernon Supp. 2009). The record here demonstrates that Appellant picked up a loaded gun and pointed it at Staggs's head. Therefore, viewing the evidence in the light most favorable to the verdict, we hold that the evidence is legally sufficient to support Appellant's conviction for aggravated assault with a deadly weapon.

Appellant would be guilty of the offense of possession of a firearm by a felon if he had been convicted of a felony five or more years prior to this offense and thereafter was found in possession of a firearm at a place other than where he lives. *See* Tex. Penal Code Ann. § 46.04 (Vernon Supp. 2009). Here, the record reveals

6

that Staggs found appellant—who had a felony conviction more than five years earlier—sitting in a truck outside his home with a loaded weapon. Appellant admitted that he had driven the truck with the firearm in it on the day of the incident and the day before the incident. Accordingly, Appellant admitted to possession of a firearm while away from the premises where he lived. Thus, viewing the evidence in the light most favorable to the verdict, we hold that the evidence is legally sufficient to support Appellant's conviction for possession of a firearm by a felon.

Looking to the question of the factual sufficiency of the evidence and reviewing all the evidence, we held that its factually sufficient. *See Johnson*, 23 S.W.3d at 11. Looking at the grand jury and trial court testimony of Appellant, it is apparent that he defended the assault charge with the claim of self-defense and the claim of possessing the firearm at the premises where he lived. His claim of self-defense was based upon his assertion that he did not know that the persons tapping on his window with a light and shouting, "Police," were police officers and that he thought he might be being robbed. He claimed that the gun was found in his truck at his home, the truck being parked in front of his house with the two wheels closest to the house being on the sidewalk.

The trial court disbelieved Appellant's claims and specifically found that the truck was parked in a public place. Without regard to where the truck was parked, Appellant admitted to having driven his truck around with the gun in it the day of the incident and the day before the incident.

7

The trial court's findings under all the evidence do not shock the conscience or show bias. *See Sells v. State*, 121 S.W.3d 748, 754 (Tex. Crim. App. 2003), *cert. denied*, 540 U.S. 986 (2003). Nor are the findings manifestly unjust. We overrule Appellant's first and second points.

**Ineffective Assistance of Counsel**

In his third point, Appellant questions his trial counsel's tactics in allowing him to testify before the grand jury. To establish ineffective assistance of counsel, an appellant must show by a preponderance of the evidence that his counsel's representation fell below the standard of prevailing professional norms and that there is a reasonable probability that, but for counsel's deficiency, the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005); *Mallett v. State*, 65 S.W.3d 59, 62–63 (Tex. Crim. App. 2001); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999).

In evaluating the effectiveness of counsel under the first prong, we look to the totality of the representation and the particular circumstances of each case. *Thompson*, 9 S.W.3d at 813. The issue is whether counsel's assistance was reasonable under all the circumstances and prevailing professional norms at the time of the alleged error. *See Strickland*, 466 U.S. at 688–89, 104 S. Ct. at 2065. Review of counsel's representation is highly deferential, and the reviewing court indulges a strong presumption that counsel's conduct fell within a wide range of

reasonable representation. *Salinas*, 163 S.W.3d at 740; *Mallett*, 65 S.W.3d at 63. A reviewing court will rarely be in a position on direct appeal to fairly evaluate the merits of an ineffective assistance claim. *Thompson*, 9 S.W.3d at 813–14. "In the majority of cases, the record on direct appeal is undeveloped and cannot adequately reflect the motives behind trial counsel's actions." *Salinas*, 163 S.W.3d at 740 (quoting *Mallett*, 65 S.W.3d at 63). To overcome the presumption of reasonable professional assistance, "any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Id.* (quoting *Thompson*, 9 S.W.3d at 813). It is not appropriate for an appellate court to simply infer ineffective assistance based upon unclear portions of the record. *Mata v. State*, 226 S.W.3d 425, 432 (Tex. Crim. App. 2007).

The second prong of *Strickland* requires a showing that counsel's errors were so serious that they deprived the defendant of a fair trial, i.e., a trial with a reliable result. *Strickland,* 466 U.S. at 687, 104 S. Ct. at 2064. In other words, appellant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694, 104 S. Ct. at 2068. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* The ultimate focus of our inquiry must be on the fundamental fairness of the proceeding in which the result is being challenged. *Id.* at 697, 104 S. Ct. at 2070.

9

The record here does not establish counsel's reasoning in allowing Appellant to testify. Under such circumstances, we are not to speculate on counsel's reasoning. *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). We thus must conclude that no error is shown.

Appellant asserts that we should not inquire into trial strategy absent no possible basis existing to determine counsel's reason for having him give grand jury testimony. *See Johnson v. State*, 614 S.W.2d 148, 152 (Tex. Crim. App. 1981). Appellant argues,

> Appellant's point is simple. Trial counsel permitted him to testify before the grand jury to either obtain a no-bill or to presumably defeat the law enforcement component of the charge. This tactic is questionable at first blush in the sense that it allowed the State to re-indict and prove up a new charge. On the other hand, Appellant is mindful of the argument that Appellant's testimony might well have been the deciding factor in persuading the Grand Jury to indict him on the lesser charge of Aggravated Assault.

This argument defeats itself. Acknowledging that we should not inquire into the trial tactics absent a possible basis to make the decision, Appellant acknowledges a reasonable basis existed. We therefore overrule Appellant's third point.

10

**Conclusion**

Having overruled all three of Appellant's points, we affirm the trial court's judgments.

CHARLES BLEIL
JUSTICE

PANEL: LIVINGSTON, C.J.; MEIER, J.; and CHARLES BLEIL (Senior Justice, Retired, Sitting by Assignment).

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: July 15, 2010

11